MARY J. DARROW, Respondent, v. FAMILY FUND SOCIETY, Appellant.

'116  537
·120  242

116  537
131  373

Defendant, an insurance association, organized under the act of 1883 (Chap. 175, Laws of 1883), admitted D as a member and issued to him a certificate whereby it agreed to pay plaintiff, upon proofs of D.s death, $5,000 from its "death fund." In case the death fund should prove insufficient to meet the existing claims by death, defendant agreed that "a call shall be made upon this entire class of membership in force." These assessment calls upon the members they were required to pay within thirty days from the call. In an action upon the contract it appeared that a single assessment of the members liable to call at the time of D.s death at the rates prescribed, would have produced a sum in excess of the amount called for by the policy. *Held,* that the action was maintainable; that the failure of defendant to perform the duty, in case the death fund was insufficient, of assessing its members as provided rendered it liable; that plaintiff's remedy was not limited to an action in equity to compel the performance of that duty.

The contract provided that it should be void if the member shall die "in violation of or attempt to violate any criminal law of the United States or of any state or country in which the member herein named may be." D. died in this state and defendant offered to prove that he died from the effects of poison taken by him with intent to take his life. The evidence was excluded. *Held,* no error; that the fact that D. committed suicide was no defense within the conditions of the policy, suicide not being a crime within this state, although the attempt to commit suicide is.

For the purpose of upholding a contract of insurance its provisions will be strictly construed as against the insurer, when its terms permit more than one construction that will be adopted which supports its validity. It is only when no other is permissible by the language used that a construction which works a forfeiture will be given to it.

*Bradley* v. *Mut. B. L. Ins. Co.* (45 N. Y. 422); *Cluff* v. *Mut. B. L. Ins. Co.* (13 Allen, 308); *Murray* v. *N. Y. L. Ins. Co.* (96 N. Y. 614) distinguished.

Reported below, 42 Hun, 245.

(Argued October 29, 1889; decided November 26, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made December 1, 1886, which affirmed a judgment in favor of the plaintiff, entered upon a verdict.

This was an action on a policy of insurance or certificate of membership issued by defendant upon the life of James H. Darrow, brought by plaintiff as the beneficiary named therein.

The facts are sufficiently stated in the opinion.

*George Wilcox* for appellant.    This action at law cannot be maintained against the defendant without proof of sufficient money in the death fund of the association to pay the claim. (Bliss on Life Ins. 766; *Brown v. C. M. B. Assn.*, 33 Hun, 265.) Where there is a promise to pay out of a particular fund, the promisee is restricted to the fund thus specified, and has no remedy if the fund does not come into the promisor's possession.    (1 Whart. on Cont. § 598; *Munger v. Shannon*, 61 N. Y. 251, 260; *Snell* v. *Cheney*, 88 Ill. 258; *Atkinson* v. *Mauks*, 1 Cow. 691, 707; 1 Edw. on Bills and Notes, § 157; *Bailey* v. *M. B. Assn.*, 27 N. W. Rep. 770; *Smith* v. *C. F. B. Assn.*, 24 Fed. Rep. 685; *Eberle* v. *Kauffeld*, 2 How. Pr. [N. S.] 488.)    It was error to exclude evidence as to the circumstances attending the death of Darrow. (*Bradley* v. *M. B. L. Ins. Co.*, 45 N. Y. 422; Penal Code, §§ 174, 178; *Fitch* v. *A. P. L. Ins. Co.*, 59 N. Y. 557.)    The manner of the death of the said Darrow was material, and the letter offered in evidence was admissible as part of the *res gestæ*. (*Wilcox* v. *Green*, 23 Barb, 639, 642; *Newton* v. *M. B. Ins. Co.*, 2 Dillon, 154; *Ins. Co.* v. *Mosley*, 8 Wall. 397, 404; *Howe* v. *Brundage*, 1 T. & C. 429; *Moore* v. *Hamilton*, 44 N. Y. 673; 1 Phil. Ev. [4th Am. ed.] 185; 1 Green. on Ev. 108; 1 Whart. on Ev. 259.)

*Edgar T. Brackett* for respondent.    The claim of the defendant that the plaintiff should have instituted some proceeding, equitable or otherwise, to compel it to levy an assessment to pay her claim, instead of bringing an action, is not tenable.    (*Freeman* v. *N. B. Society*, 42 Hun, 252; *O'Brien* v. *H. B. Society*, 51 id. 495; *Fulmer* v. *U. M. A. Soc.*, 12 N. Y. S. R. 347; *Hankinson* v. *Page*, 12 N. Y. Civ. Pro. Rep. 279, 288; *Fitzgerald* v. *E .R.F. L. A.*, 24 N. Y.

S. R. 493; *Smith* v. *Buffalo*, 44 Hun, 156; *Baldwin* v. *Oswego*, 2 Keyes, 133–136; *Beard* v. *Brooklyn*, 31 Barb. 142; *Pech* v. *E. A. A.*, 52 Hun, 253.) The plaintiff fully made out her cause of action. (*Boice* v. *T. & M. M. Ins. Co.*, 38 Hun, 246–250; *Goodwin* v. *M. M. L. Ins. Co.*, 73 N. Y. 480; *Prentice* v. *K. L. Ins. Co.*, 77 id. 483.) The language of the policy must be strictly construed against the insurer, and its effects will not be extended to work a forfeiture. If the words are of doubtful meaning or susceptible of two fair interpretations, they should and will be construed to uphold, rather than avoid the policy. (*Dilleber* v. *H. L. Ins. Co.*, 69 N. Y. 256, 264; *Hoffman* v. *A. Ins. Co.*, 32 id. 405, 413; *Griffey* v. *N. Y. C. Ins. Co.*, 100 id. 417, 421; *Burleigh* v. *G. Ins. Co.*, 90 id. 220, 225; *Patrick* v. *E. L. Ins. Co.*, 67 Barb. 202; *Fitch* v. *A. P. L. Ins. Co.*, 59 N. Y. 557, 573; 42 Hun, 246–247; *Meacham* v. *N. Y. S. M. B. A.*, 46 id. 363–364.) Suicide is not a crime. (Penal Code, §§ 3, 34, 173, 685.)

BRADLEY, J. The defendant is an insurance association, organized pursuant to chapter 175 of the Laws of 1883. On January 14, 1885, James H. Darrow was admitted as a member of the association by a certificate and policy or undertaking, whereby, upon the terms and conditions mentioned in it, the defendant bound itself to pay to the plaintiff, within sixty days after the requisite proof of death of such member, $5,000 "from the death fund of the society at the time of said death" as in the policy "mentioned and provided." This member died in December, 1885. The defendant denies its liability to the plaintiff. And one of the alleged defenses is, that the money in its death fund, at the time of the death of Darrow, was not sufficient to pay the claim. By the contract it is provided that, whenever the death fund is insufficient to meet the existing claims by death, "a call shall be made upon this entire class of membership in force," in the manner provided, "for a mortuary payment as per mortuary rates" referred to, "but not more than one call shall be made to meet one death;"

and that eighty per cent of the net amount received from the call, shall be deposited in a bank and be used for payment of death claims only, and the remaining twenty per cent shall be set apart as a reserve fund to meet any contingency that may arise by reason of extra mortality; and that such reserve fund so accumulated shall, at the time and in the manner mentioned, be apportioned and the surviving members credited with it.

The members pay an admission fee and annual dues, which produce a fund for expenses, but the death fund is supplied by assessment-calls upon the members, and they are required to pay within thirty days from the date of the notice or call for payment. Thus the association is enabled to make collections, after the death of a member, in time to meet the engagement assumed by the contract, by which it may take sixty days to pay the beneficiary.

It is contended by the counsel for the defendant that its liability in an action at law upon its contract, is dependent upon money being in the death fund applicable to the payment of the claim, and that the extent of such liability, within the stipulated sum, is measured by the amount in that fund so applicable at the time of the death of the member, on account of whose death the beneficiary seeks to recover. It is further argued that if the association fail to make the call, by way of assessment of the members, to supply the death fund to meet the demand upon it, the remedy of the beneficiary is in equity to require the defendant to proceed to make the assessment.

While the promise to pay was to do so from the death fund at the time of the death of the member, the defendant also, by the same contract, undertook to make the call upon the members if that fund then was insufficient to meet the claim. The reasonable construction of these provisions, in view of the apparent purpose of the contract, is that the association should pay the amount to which the beneficiary might be entitled, and that it be paid from the death fund if that is sufficient at the time of death, and, if not, the amount should be produced

through the means provided for assessment of the members for the purpose.

This is the duty of the defendant when the beneficiary is entitled to payment, and it arises upon the proper information of the death of the member. This duty is the contract undertaking of the defendant, supported by the power without any order or direction of the court, to enable it to perform its promise to pay. Its purpose is to supply the means to do so. And there is no well-founded reason to support the claim that the sole remedy of a beneficiary, entitled to payment, is in a court of equity to compel the society to make the call upon the members. The only method by which the defendant can supply itself with the means of performing its engagements to pay death claims is by assessment. And it is within the contemplation of the parties, as represented by the provisions of the contract, that the instrumentalities furnished will be employed by the association to enable it to do so. And it cannot rely upon its failure to perform its plain duty in that respect to defeat a recovery. In this case, for reasons which will be referred to, the defendant did not intend to pay the claim in question or any portion of it, and, therefore, as is evident, purposely omitted to exercise the means provided to raise the money to pay the plaintiff. What has already been said, tends to some extent to meet the contention that a death claim is payable out of a particular fund, designated as the death fund, and that upon it depends the amount of recovery. The principle sought to be applied in support of that proposition, is not applicable to the extent essential to its availability as a defense. The plaintiff in the complaint alleges that "the defendant has a sum sufficient in its death fund to pay the said sum so due to the plaintiff, or if it has not, has members enough liable to call for assessment to pay the same to the plaintiff in full." And it clearly appeared by the evidence that a single assessment of the members liable to call at the time of the death of Darrow, on account of this claim, at the mortuary rates prescribed, would have produced a sum in excess of the amount which the defendant undertook by the

policy to pay the plaintiff. And it must be assumed in this case (as nothing appears to the contrary), that the collection, through the means provided, of the requisite amount was dependent on no contingency, and, therefore, the funds were and are at the command of the defendant to make the payment. The assertion of the defendant that it has not sufficient funds, applicable to that purpose, in hand to do so, is found upon its failure to perform the duty imposed upon it by the contract, and which it undertook to perform, provided the plaintiff's alleged claim, resulting from the death of a member, was valid.

It was alleged as a defense, and the defendant offered to prove on the trial, that the member, Darrow, died from the effects of poison taken by him, and which was administered by himself with intent to take his own life. The evidence was excluded and exception taken. The fact that he committed suicide, was no defense unless it came within some condition of the contract of insurance relieving the defendant from liability in such case. (*Fitch* v. *A. P. L. Ins. Co.*, 59 N. Y. 557.)

The provision relied upon to support the defense so alleged, is the provision in the contract that it should "be void if the member herein shall die in consequence of a duel or by the hands of justice, or in violation of or attempt to violate any criminal law of the United States, or of any state or country in which the member herein named may be." The death of Darrow was in this state. At common law suicide was a crime, and the consequence was the forfeiture of the chattels, real and personal, of the *felo de se*. (4 Bl. Com. 190.) It is not a crime in this state. (Penal Code, §§ 2, 173.) The attempt to commit suicide is made a crime by the statute, which provides that: "A person who, with intent to take his own life, commits upon himself any act dangerous to human life, or which, if committed upon another person and followed by death as a consequence, would render the perpetrator chargeable with homicide, is guilty of attempting suicide (Penal Code, § 174), and is guilty of a felony punishable by imprison-

ment, etc. (Id. § 178). While the attempt to commit suicide is a crime, the accomplishment of the purpose to do so is not. It is with much force urged, on the part of the defendant, that the criminally unlawful attempt preceded the death, and that it was no less a violation of law because such was the result or consequence of it; that whether successful or unsuccessful there was an attempt within the statute. Although that may be so in some sense, in common parlance an attempt to commit crime imports a purpose, not fully accomplished, to commit it. It is the attempt to commit suicide that is the crime, while the taking one's own life is no violation of the criminal law. The attempt in such case to commit crime would be merely an unaccomplished purpose to attempt suicide, and, therefore, the peculiarity of the offense referred to is such that it cannot come within the provision of the statute that " A person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime was consummated, unless the court, in its discretion, discharge the jury and directs the defendant to be tried for the crime itself." (Id. § 685.) As the attempt to commit suicide is the only crime involved in the purpose and act of a party having in view the taking his own life, it is not seen how there can in the law be recognized an attempt to commit the crime, for whatever may be done with the intent and purpose of suicide is involved in the attempt to do it, and thus constitutes an ingredient of the main and only offense.

It must, for the purpose of the question here, be assumed that Darrow had the purpose of taking his own life, and that he fully accomplished such purpose. The result of his act influenced by such intent, then, was his death. By the act of taking his own life he violated no criminal law, unless the attempt to do it may be distinguished from the act accomplished. An act is characterized by the purpose, when ascertained, of the party doing it, or by its result. If the act fails to accomplish its purpose, it constitutes an attempt, but if the result of it is the consummation of the purpose, the act is not commonly designated as an attempt. The common accepta-

tion of terms used, and which do not necessarily have a technical meaning, is entitled to some consideration in the construction of contracts where the intention of the parties is sought for, as it must be, in the language employed. For the purpose of upholding the contract of insurance its provisions will be strictly construed as against the insurer. (*McMaster* v. *Ins. Co.*, 55 N. Y. 222; *Dilleber* v. *Home Life Ins. Co.*, 69 id. 256.) When its terms permit more than one construction, that one will be adopted which supports its validity. (*Coyne* v. *Weaver*, 84 N. Y. 386.) And it is only when no other is permissible by the language used, that a construction which works a forfeiture will be given to such an instrument. (*Hitchcock* v. *N. W. Ins. Co.*, 26 N. Y. 69; *Griffey* v. *N. Y. C. Ins. Co.*, 100 id. 417.)

The reason assigned for such rule of construction is that the insurer is supposed to have chosen the language to express the terms of the contract, and it has become a rule of law that if it be left in doubt whether words of the contract " were used in an enlarged or a restricted sense, other things being equal, the construction will be adopted which is most beneficial to the promisee." (*Hoffman* v. *Ætna Fire Ins. Co.*, 32 N. Y. 405, 413.) There is nothing in the language of the policy to indicate that the defendant had reason to suppose that the promisee understood that suicide of the member came within its terms. And words may easily have been employed to embrace it within a condition, if it had been in the contemplation of the defendant as an act of forfeiture of the claim of the beneficiary upon the contract. Inasmuch as suicide is not a violation of the criminal law, the words do not necessarily or clearly import that the act which produces it, is within the provision in question, or that it was within the intention of the defendant. And that is a sufficient reason why they should not be extended or their meaning refined by interpretation, with a view to treat the act causing death, as within the invalidating condition of the policy. (*Griffey* v. *N. Y. C. Ins. Co., supra.*)

Thus far the question has not been considered whether the mere consequence or result of an act of the member in vio-

lation of criminal law, would come within such provision. If literally construed, it might not. The contract is rendered void if the member "die, in violation of or attempt to violate any criminal law." It is not death in consequence of the violation of law, but death in or during the act of violation of law that is expressed by the words used.

In *Bradley* v. *Mutual Benefit Life Insurance Company* (45 N. Y. 422) the conclusion was warranted that, at the time of his death, the assured was engaged in the violation of law. And such was the case in *Cluff* v. *Mutual Benefit Life Insurance Company* (13 Allen, 308), where a policy on the same life, and containing the like provisions, was the subject of the action, and the defense was the same.

In *Murray* v. *New York Life Insurance Company* (96 N. Y. 614) the provision of the policy was that, if the assured should "die in, or *in consequence* of, the violation of the laws," etc., the policy would be void. It may be, if the mortal injury is received while the assured is engaged in the criminal act, that the death following as the consequence, comes within the import of the provision. But the view taken renders it unnecessary to consider that question, and no opinion is expressed upon it.

The conclusion is that the death of the member by suicide did not, within the meaning of any provision of the policy, render it for that reason void, and, therefore, the exclusion of the evidence upon that subject was not error. No other question requires the expression of consideration.

The judgment should be affirmed.

All concur, except HAIGHT, J., not sitting.

Judgment affirmed.