HARRY SNECK, Respondent, *v.* THE TRAVELLERS' INSURANCE COMPANY of Hartford, Conn., Appellant.

*Accident insurance policy — what is a "loss by severance of one entire hand"— erroneous submission of the question to the jury.*

Upon the trial of an action brought to recover the amount of an accident insurance policy it was shown that in the policy of insurance given by the defendant to the plaintiff was a clause as follows: "If loss by severance of one entire hand or foot results from such injuries" the defendant shall be paid one-third of the principal sum of $2,000 named in lieu of the weekly indemnity therein provided for.

The plaintiff's hand was caught in the knives of a planing machine and was cut off three-quarters of an inch back of the knuckle joints and just back of the head of the first bone of the thumb. The severance was of the phalanges and the heads of the metacarpel bones, leaving the palm of the hand covering the carpal and metacarpal bones, except the heads of the latter, and the middle bone of the thumb except its head. He retained the joint at the wrist unimpaired with all the motions it ever had, in all directions. The surgeon who made the amputation testified on behalf of the plaintiff, that "the portion of the hand which remains is more useful than if the amputation had been at the wrist." The plaintiff himself testified that what remained of his hand was of considerable use to him.

*Held,* that to bring the case within the provision of such clause of the policy the loss must be substantially of the entire hand, both in respect to its structure and its use. (BRADLEY, J., dissenting.)

That under the evidence in the case it was manifestly erroneous to submit to the jury the question whether the plaintiff had sustained a loss within the provision of the policy in regard to a "severance of one entire hand." (BRADLEY, J., dissenting.)

APPEAL by the defendant, The Travellers' Insurance Company of Hartford, Connecticut, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county

of Monroe on the 29th day of March, 1894, upon the verdict of a jury rendered after a trial at the Monroe Circuit, and also from an order entered in said clerk's office on the 29th day of March, 1894, denying the defendant's motion for a new trial made upon the minutes.

*Satterlee & Taylor*, for the appellant.

*Howard W. Sneck*, for the respondent.

Dwight, P. J.:

The defendant insured the plaintiff, in the sum of ten dollars a week, against loss of time, not exceeding twenty-six weeks, resulting from bodily injuries received in a manner described and producing a degree of disability particularly defined; and further, by its policy, undertook that "*if loss by severance of one entire hand* or foot" should result from such injuries, alone, within ninety days, it would pay him one-third the principal sum of $2,000, named in the policy, in lieu of such weekly indemnity.

By this action the plaintiff sought to recover under the second alternative of the above provision, and he was permitted to do so on the theory that he had suffered " the loss by severance of one entire hand." An exception taken by the defendant to the charge of the court raises the question whether that theory was supported by the evidence in the case, and the motion for a new trial was made on the ground that the verdict of the jury in that respect was contrary to the evidence.

The evidence is undisputed. The plaintiff's hand was caught in the knives of a planing machine and was cut off three-fourths of an inch back of the knuckle joints and just back of the head of the second bone of the thumb. Anatomically, the severance was of the phalanges and the heads of the metacarpal bones, leaving the palm and back of the hand covering the carpal and metacarpal bones, except the heads of the latter, and the middle bone of the thumb, except its head. He retained the joint at the wrist unimpaired, with all the motions it ever had, in all directions. The surgeon who made the amputation, and who was called by the plaintiff, testified: " The fingers and the heads of all the metacarpal bones were cut off with a planer. * * * A little over half of the hand, speaking anatomically, is

gone.   There are twenty-seven bones in the skeleton of the hand.
Thirteen bones are entirely gone and parts of five more.   The parts
of the five are simply the heads of the metacarpal bones and (the
head of) the middle bone of the thumb."   The same surgeon testi-
fied that the portion of the hand which remains is more useful than
if the amputation had been at the wrist, and he illustrated the state-
ment by saying that the plaintiff might use it in pitching hay, grasp-
ing the handle of the fork with his right and lifting with his left.
The plaintiff himself testified that his left hand is of considerable
use to him.   There is no evidence to the contrary of that above given.

Upon this evidence it was, we think, manifest error to submit to
the jury the question whether the plaintiff had sustained the loss, by
severance, of an entire hand.   The loss which he sustained was
unquestionably by severance, but it was not of the entire hand.   He
lost all of his fingers, but he retained part of his thumb and nearly
the whole of the palm and back of the hand.

There seems to be no room for construction of the language of
the contract.   To bring the case within the provision in question the
loss must be of the entire hand.   Of course this means substantially
the entire hand, both in respect to its structure and its use.   In this
case, upon undisputed evidence, there was not such a loss in either
respect.   Structurally, nearly half his hand was saved to the plain-
tiff, and the testimony, both of himself and his surgeon, is to the
effect that what he retains is of appreciable and substantial use.

The argument does not seem to admit of elaboration nor the cita-
tion of authorities.   The case stands upon the unequivocal language
of the contract and the undisputed evidence as to the extent of the
injury.

We think the judgment and order appealed from must be reversed
and a new trial granted.

So ordered, with costs to abide the event.

LEWIS and HAIGHT, JJ., concurred.

BRADLEY, J. (dissenting) :

The plaintiff was operating a planer when his left hand was sev-
ered.   The leading question upon the trial was whether the injury
suffered by him was loss by severance of the entire hand within the
meaning of the policy, because, upon the determination of that fact

in the affirmative was dependent the plaintiff's right to recover anything more than a weekly allowance.

The description given by the plaintiff of the injury is that his hand was " cut off from three-quarters of an inch to an inch back of the knuckle joint, and the thumb just back of the head of the bone of the first joint." And the portion remaining of the hand was shown to the jury. The description of it, as given by the evidence of a surgeon, is that the fingers and the heads of all the metacarpal bones were cut off ; the thumb had been pressed back and the bone cut off obliquely, and he added that a little over half the hand, speaking anatomically, is gone ; that there are twenty-seven bones in a complete hand ; thirteen of them are entirely gone from the plaintiff's hand and parts of five more, and that the parts gone of the five are the heads of the metacarpal bones and the middle bone of the thumb. These metacarpal bones are those which connect the carpus or wrist with the phalanges or fingers, and constitute what is termed the metacarpus, as the doctor expresses it. He says that the hand commences at the termination of the forearm, and includes the wrist joint. If the removal of the entire hand is essential to the "loss by severance of one entire hand" within the meaning of the provisions of the policy, the plaintiff's recovery cannot be sustained. But it would seem more reasonable in its import to so construe the provision as to confine the application of it to the effect of the loss produced by the severance. Thus interpreted, the right of such indemnity would be given by the defendant's policy, when, by the severance of the hand or foot, the use of it as such is entirely lost.

Somewhat analogous is the case of *Sheanon* v. *Pacific, etc., Ins. Co.* (77 Wis. 618 ; 20 Am. St. Rep. 151), where the question related to the provision of a policy that the company would pay if the insured should " suffer the loss of the entire sight of both eyes, or the loss of two entire hands or two entire feet, or one entire hand and one entire foot." The court held that the loss by the assured of the use of his feet from accidental cause came within such provision of the policy, and that paralysis of his lower limbs caused by his being shot in the back entitled him to recover as for loss of his feet. No defined manner of the loss of the members was made requisite to relief under that policy. Although it is otherwise in the present case, the requirement of physical severance has relation

only to the manner in which the injury must be produced to bring the case within the provisions of the policy for the greater indemnity. And the loss covered by it does not necessarily depend upon the extent of the amputation, but upon the effect of the severance upon the use of the member, and the effect must be the entire loss of the use of it.

The view taken is that a construction more favorable than this to the defendant is not required by the terms of the policy. That is the sense in which it is reasonable to suppose it was intended and understood, and such is the interpretation to which it is fairly entitled. (*Hoffman* v. *Ætna, etc., Ins. Co.*, 32 N. Y. 405; *Herrman* v. *Merchants' Ins. Co.*, 81 id. 184; *Darrow* v. *Family Fund Society*, 116 id. 537.)

This was the view taken by the trial court, and the question whether the plaintiff's loss by the severance of his hand was the loss of the entire use of it was submitted to the jury with instructions that if they found that it was not so the plaintiff was not entitled to recover any portion of the principal sum mentioned in the policy. On the subject of the effect of the severance of the hand upon the use of what remained of it, evidence was given tending to prove, and it must be assumed, that it was more useful for certain purposes than would have been the condition produced if it had been taken off at the wrist joint; that it can be placed under bodies and thus used in raising them, and that it can be used to bear upon bodies to steady them while he is lifting them with the other hand, but that he cannot grasp anything with it. Whether it would have given him greater inconvenience and been less useful if none of it had remained is not necessarily the question, but the inquiry is whether the loss of it as a hand for its purposes as such was entire. There remained neither fingers, thumb or knuckles.

The evidence warranted the conclusion that for the practical purposes to which the use of a hand is adapted there was an entire loss of the use of it, and the question was properly submitted to the jury.

For these reasons, not adopting the views of a majority of the court, I think the judgment and order should be affirmed.

Judgment and order appealed from reversed and new trial granted, with costs to abide the event.