**Sonia F. ALLAND, Plaintiff-Appellant,**

v.

**CONSUMERS CREDIT CORPORATION,
Defendant-Appellee.**

**No. 410, Docket 72-1917.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 24, 1973.

Decided March 28, 1973.

Bradley R. Brewer, Maull & Soeiro, New York City, for plaintiff-appellant.

Joseph Feldman, New York City (Jerome Handler, Paul M. Godlin, Schur, Rosenberg, Handler & Jaffin, New York City, of counsel), for defendant-appellee.

Before MOORE, HAYS and MANSFIELD, Circuit Judges.

MOORE, Circuit Judge:

Sonia Alland, a citizen of New York, appeals from that part of a final judgment of the United States District Court for the Southern District of New York dismissing on the merits Claim 3 of her complaint, by which she sought to recover $6,066 as reasonable attorney's fees for costs incurred in suing upon two promissory notes. The district court granted the relief sought on Claims 1 and 2 of the complaint and

awarded Mrs. Alland, pursuant to the confession of judgment contained in the notes, $18,200 plus interest, which represented the amount owed by the appellee. Neither party appeals from the judgment as to the first two claims; Mrs. Alland appeals only the dismissal of her Claim 3.

## I.

The district court, whose opinion is reported at 54 F.R.D. 252 (S.D.N.Y. 1971), found the following facts. The appellee Consumers Credit Corporation ("the finance company"), an Ohio corporation with principal place of business in Cleveland, was organized in 1951 with money provided by Mrs. Alland's father, Louis Feldman. The stock of the new corporation was divided among his three children: appellant Sonia Alland, he.· brother Raymond Feldman, and Alex Shepard (or his wife, Helen Feldman Shepard, appellant's sister). Alex Shepard has been president, chief executive officer, and general manager of the finance company since its inception. On November 1, 1966, appellant and her husband, Alexander Alland, Jr., sold all their stock in the finance company to the company. Alex Shepard, in his capacity as president, executed two prom-

issory notes as part of the sale agreement. Note 1 was payable to appellant, in the amount of $42,000, and Note 2 was payable to her husband, in the amount of $2,000. Both notes provided for payment of principal in installments on stated dates, and both contained an acceleration provision to become operative thirty days after notice of default.[1]

The appellee finance company defaulted on payments due on both notes on November 1, 1970. Notice of default was mailed to appellee on December 9, 1970, and again on January 27, 1971. Acting on behalf of the company, Alex Shepard refused to make payment of the balance owing on either note. Appellant retained counsel in her effort to collect on the notes. Counsel contacted Shepard by telephone on March 2, 1971, for the purpose of informing him that appellant would not commence legal action if appellee made full payment of the amounts owing by March 5, 1971. Shepard indicated his awareness of the default, but he informed counsel that he had decided not to pay until compelled to do so.

Appellant moved *ex parte* for a judgment by confession in the Southern District of New York on March 27, 1971.

---

1. The language contained in Note 1 was as follows:

PROMISSORY NOTE

$42,000.00          November 1, 1966

FOR VALUE RECEIVED, the undersigned promises to pay to the order of SONIA F. ALLAND the sum of Forty-Two Thousand Dollars ($42,000.-00) with interest computed from November 1, 1966 on the unpaid balance at the rate of six percent (6%) per annum, computed and payable quarterly on the unpaid balance, with the first installment of interest to be paid on February 1, 1967. The principal sum due hereunder shall be payable in five (5) equal consecutive annual installments of Eight Thousand Four Hundred Dollars ($8,-400.00) each, the first such installment being due on the 1st day of November, 1967. Payment of one or more installments in advance of the dates herein provided may be made at the option of the maker without penalty.

If any installment of this note, or interest thereon, be not paid within thirty (30) days after written notice that it is overdue, then the entire unpaid balance hereof shall at once become due and payable at the option of the holder hereof, and the undersigned hereby authorizes any attorney at law to appear in any Court of Record in the United States, after the above obligation becomes due as aforesaid, and waive the issuing and service of process and confess a judgment against the undersigned in favor of the holder hereof for the amount then appearing due, together with costs of suit, and thereupon to release all errors and waive all right of appeal.

CONSUMERS CREDIT
CORPORATION
By /s/ Alex J. Shepard
President

Except for the amounts involved, the language of Note 2 was identical to that of Note 1.

In Claim 1 of her complaint appellant sought recovery of the balance owing on Note 1, $17,304 ($16,800 principal plus $504 interest); in Claim 2 she sought recovery of the balance owing on Note 2, $896 ($800 principal plus $96 interest).[2] Claim 3 of the complaint, seeking $6,066 attorney's fees as "costs of suit" in recovering on the notes, was based on the following language which appeared in both notes:

> If any installment of this note, or interest thereon, be not paid within thirty (30) days after written notice that it is overdue, then the entire unpaid balance hereof shall at once become due and payable at the option of the holder hereof, and the undersigned hereby authorizes any attorney at law to appear in any Court of Record in the United States, after the above obligation becomes due as aforesaid, and waive the issuing and service of process and confess a judgment against the undersigned in favor of the holder hereof for the amount then appearing due, *together with costs of suit,* and thereupon to release all errors and waive all right of appeal. (emphasis added)

The district court, finding that the sale agreement was "a product of arms-length bargaining between the parties," 54 F.R.D. at 254; that "the corporate promissor was completely familiar with the language of promissory notes and with the legal consequences thereof," *id.* at 255; that "both promissory notes were either drafted by defendant's own attorneys or carefully reviewed by them before being executed by its president, signing officer and sole shareholder, Alex Shepard," *id.*; and that "Shepard stated that he was aware that he was in default, but had decided not to pay the notes until forced to do so," *id.*, entered judgment in favor of appellant on Claims 1 and 2. *Id.* at 256. As to

Claim 3, however, the district court dismissed, ruling that:

> Plaintiff's claim for $6,066 attorney's fees, however, is denied. "Costs of suit" reasonably refers to mere filing fees rather than attorney's fees. 54 F.R.D. at 256.

The narrow issue we must determine on appeal, then, is whether the district court erred in ruling that "costs of suit" as used in the parties' contractual agreement refers only to court filing fees, to the exclusion of attorney's fees. Resolution of this question depends, we think, on ascertaining the intent of the parties in their use of those words in the agreement.

## II.

We note that there is no question of subject matter jurisdiction here; federal court jurisdiction exists by reason of diversity of citizenship. 28 U.S. C. § 1332. And since in the promissory notes the appellee finance company, in case it defaulted, "authorize[d] any attorney at law to appear in any Court of Record in the United States * * * and waive the issuing and service of process and confess a judgment against [the finance company]," appellee consented in advance to *in personam* jurisdiction in federal district court. *See* Atlas Credit Corp. v. Ezrine, 25 N.Y.2d 219, 227, 303 N.Y.S.2d 382, 250 N.E.2d 474, 479 (1969). Neither party contests the district court's ruling that appellee's "consent to the jurisdiction of this Court as expressed in the two promissory notes was intelligently given." 54 F. R.D. at 254. *See* National Equipment Rental, Ltd. v. Szukhent, 375 U.S. 311, 316, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964); Bowles v. J. J. Schmitt & Co., Inc., 170 F.2d 617, 622 (2d Cir. 1948). And although the district court correctly ruled that the *entry* of a confessed judgment "is a matter of procedure where the federal rules govern" for purposes of *Erie,*[3] *see Bowles, supra,* 170 F.2d at

2. On March 25, 1971, Alexander Alland had assigned to his wife all his rights in Note 2.

3. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

620, questions regarding the interpretation to be given language in the confession of judgment are governed, as are other written agreements, by substantive state law. The general rule is that a federal court will apply the law of the forum state, including that state's choice of law rules. Klaxon v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 478, 496, 61 S. Ct. 1020, 85 L.Ed. 1477 (1941); Patch v. Stanley Works (Stanley Chemical Co. Div.), 448 F.2d 483, 487 (2d Cir. 1971); Pryor v. Swarner, 445 F.2d 1272, 1274 (2d Cir. 1971). Under New York choice of law principles, the substantive law of New York is here concededly applicable. See Auten v. Auten, 308 N.Y. 155, 124 N.E.2d 99 (1954); Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963).

Careful research in the New York authorities indicates that no New York court has yet construed the phrase "costs of suit" within the context of a contractual agreement between private parties. Appellee finance company has cited numerous cases that have construed the term "costs", or "expenses", to support its argument that the generally understood legal meaning attached to those words excludes attorney's fees. *See, e. g.,* Matter of Poersch, 28 A.D.2d 1040, 283 N.Y.S.2d 926, 928 (App.Div., 3d Dep't 1967); Pelella v. Pelella, 13 Misc.2d 260, 265, 176 N.Y.S.2d 862, 867

(Sup.Ct., Kings Co. 1958), aff'd, 9 A.D. 2d 897, 195 N.Y.S.2d 599 (App.Div., 2d Dep't 1959); Royal Discount Corp. v. Luxor Motor Sales Corp., 9 Misc.2d 307, 308, 170 N.Y.S.2d 382, 383 (App.T., 1st Dep't 1957); Mutual Life Ins. Co. v. Kroehle, 29 Misc. 481, 483, 61 N.Y.S. 944, 945 (Sup.Ct., N.Y. Co. 1899); Caperna v. Williams-Bauer Corp., 185 Misc. 687, 688, 57 N.Y.S.2d 254, 255 (City Ct., N.Y. Co.), aff'd, 186 Misc. 27, 58 N.Y.S. 2d 876 (App.T., 1st Dep't 1945). We find these cases to be of little help, however, for we deal in this appeal not with the more commonly used term "costs", which does indeed carry the technical meaning urged by appellee (*i. e.,* mere court fees),[4] nor with a *statute* by which a legislative body has provided for the awarding of "costs" to a successful litigant. *See* Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 720, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). Rather, we have here a *contract* in which the words "costs of suit" were intended to carry a meaning as understood by both parties to the agreement.

■■ While it is true that each party to a litigation normally must bear its own expenses, it is clear that the parties may by contract agree to permit recovery of attorney's fees as part of plaintiff's expenses in prosecuting suit. *See* Swiss Credit Bank v. International

---

4. *But see* John Deere Co. of Baltimore, Inc. v. Cerone Equip. Co., Inc., 33 A.D. 2d 257, 307 N.Y.S.2d 129, aff'd, 27 N.Y.2d 926, 318 N.Y.S.2d 143, 266 N.E.2d 822 (1970), where the term "costs" was given a more inclusive meaning. In that case, plaintiff brought a summary judgment action to recover equipment in defendant's possession, pursuant to an agreement which gave plaintiff a security interest in the equipment. Plaintiff sought to recover, as an item of "costs", a surety premium of $7,407 which plaintiff had been forced to pay in order to obtain and post the bond necessary to its repossession procedure. The Appellate Division held, and the New York Court of Appeals affirmed, that where "despite [plaintiff's] appellant's unquestionable right to possession of the items of equipment involved, respondent prevented peaceful repossession and rejected an opportunity to satisfy his obligation by paying over the amount due," and, moreover, where defendant-respondent had "interposed no defense in the action that could be denominated in the slightest as meritorious * * * the premium was a reasonable expense necessary to preserve appellant's unquestioned security rights in the equipment" which appellant was entitled to recover as an item of "costs". 33 A.D.2d at 258–259, 307 N.Y.S.2d at 131. The court's order demonstrates that even though the statute relevant to the action (CPLR 8301, subd. [a], ¶12) did not provide for recovery of the $7,407 bond premium as an item of "costs", the particular circumstances involved, including defendant's totally unmeritorious defense, justified the awarding of that amount as part of plaintiff's "costs."

Bank, Ltd., 23 Misc.2d 572, 573, 200 N. Y.S.2d 828, 830 (Sup.Ct., N.Y. Co. 1960). *See also* 49 C.J.S. Judgments § 154, p. 287 (1947); 6 J. Moore, Federal Practice, ¶ 54.77[2], at 1349 (1971). And wherever they are valid under applicable state law, contractual rights to attorney's fees are enforceable in federal court. United States v. Carter, 217 U.S. 286, 322, 30 S.Ct. 515, 54 L.Ed. 769 (1910).

■ ■ We fully agree with appellee that no ambiguity exists as to what is commonly meant by the term "costs" as that word is used by courts, legislatures, and attorneys, and that the term does not normally refer to counsel fees. Appellee's lawyers, however, did not employ the term "costs" when they drafted or reviewed the agreement; they chose instead the more expansive "costs of suit". On this point we deem it significant, as did the district court, that the appellee-promisor is a finance company which deals daily with promissory notes and confessed judgments, and which must therefore be presumed to be completely familiar with the legal effect of the language used in such notes; that the notes here in question were either drafted by appellee's attorneys or carefully reviewed by them before being executed by Shepard; and that appellant Sonia Alland is a layman who is not expected to have familiarity with the technical, legal meanings of words which, although ordinary enough to laymen, have assumed specific legal significance when used by lawyers. Notwithstanding the fact that appellant is not expected to be familiar with legal jargon, however, if appellee's lawyers had used the term "costs" our task here would be much simplified, for that term would have expressed precisely what appellee now urges was intended by "costs of suit", and there could have been no room for doubt or mistake. But ambiguity was created by appellee's use of "costs of suit", and our inquiry thus centers upon what the parties must be reasonably held to have expected from the execution of the document in the form and lan-

guage used, *see Bowles, supra,* 170 F.2d at 622. We therefore look for guidance to the rules of construction established by the New York cases, mindful of the well-settled principle that:

> In construing contracts, words are to receive their plain and literal meaning, even though the intention of the party drawing the contract may have been different from that expressed. A party to a contract is responsible for ambiguity in his own expressions, and has no right to induce another to contract with him on the supposition that his words mean one thing while he hopes the court will adopt a construction by which they would mean another thing more to his advantage. Calderon v. Atlas Steamship Co., 170 U.S. 272, 280, 18 S.Ct. 588, 591, 42 L.Ed. 1033 (1898).

### III.

■ In Hoffman & Place v. Aetna Fire Ins. Co., 32 N.Y. 405, 412–413 (1865) the New York Court of Appeals early held that:

> It is a rule of law, as well as of ethics, that where the language of a promisor may be understood in more senses than one, it is to be interpreted in the sense in which he had reason to suppose it was understood by the promisee. * * * It is also a familiar rule of law, that if it be left in doubt, in view of the general tenor of the instrument and the relations of the contracting parties, whether given words were used in an enlarged or a restricted sense, other things being equal, that construction should be adopted which is most beneficial to the promisee. (citations and emphasis in original omitted)

*See also* Dennis v. Massachusetts Benefit Ass'n, 120 N.Y. 496, 503, 24 N.E. 843, 844 (1890); Moran v. Standard Oil Co. of New York, 211 N.Y. 187, 196, 105 N.E. 217, 220 (1914); Lee v. State Bank & Trust Co., 54 F.2d 518, 521 (2d Cir. 1931) ("the law of contracts does not judge a promisor's obligation by

what is in his mind, but by the objective test of what his promise would be understood to mean by a reasonable man in the situation of the promisee.") Since the promissory notes were drafted by appellee's lawyers or scrutinized by them before being executed by Shepard, the language contained therein must be construed most strongly against appellee, the promisor, Darrow v. Family Fund Soc'y, 116 N.Y. 537, 544, 22 N.E. 1093, 1095 (1889), and in favor of appellant, the promisee, *id.*; *see also Hoffman, supra,* 32 N.Y. at 413; Paul v. Travelers' Ins. Co., 112 N.Y. 472, 479, 20 N.E. 347, 349 (1889); Gillet v. Bank of America, 160 N.Y. 549, 554–555, 55 N.E. 292, 293 (1899). Moreover, the words used should be given the meaning which a layman would reasonably have attributed to them, Moran v. Standard Oil Co. of New York, *supra,* 211 N.Y. at 196, 105 N.E. at 220; Gillet v. Bank of America, *supra,* 160 N.Y. at 555, 55 N.E. at 294.

When the foregoing canons of construction are applied to the facts presented, it must be concluded that a reasonable layman would have been justified in believing that in the event appellee subjected him to any cost in suing on the promissory notes appellee would assume liability for all costs of such a suit. It is obvious that the finance company here could have avoided the resulting costs of a lawsuit by not defaulting on the notes, or could have minimized such costs by paying the amounts owing at any time during the early stages of what became a protracted litigation. Instead, appellee chose a course of action which not only put appellant to substantial attorney's fees, but which reflects a bad faith intent successfully to use the $18,200 owing to appellant at an interest rate (6%) more favorable than could be

obtained from a commercial lender, for a period measured by the date of default (November 1, 1970) and the date on which the district court entered judgment in favor of appellant (August 31, 1971).[5] And we note that neither in district court nor in this Court has appellee raised any defense or justification for defaulting on the notes, for dragging appellant through months of costly litigation in two federal district courts, or for burdening the courts with what appears to have been an unmeritorious, indeed, an indefensible, refusal to comply with the contractual agreement.

Appellee, a finance company, is not a stranger to the coercive advantages provided by the confessed judgment device; undoubtedly, it is fully aware that the procedure allows a creditor to avoid formal, lengthy, and expensive legal proceedings in order to collect from his debtor, and that it is precisely for this reason that lenders use the confessed judgment. *See, e. g.,* 49 C.J.S. Judgments, § 134 and cases cited therein; *cf.* American Cities Co., Inc. v. Stevenson, 187 Misc. 107, 110, 60 N.Y.S.2d 685, 688 (Sup.Ct., N.Y. Co.1946). Certainly, when appellee finds itself in its more customary role as a creditor, and not as here a debtor, it relies on the judgment of confession to avoid the type of attorney's fees which appellant was here forced to undergo. And yet, occupying the position of debtor in this appeal, appellee, with no apparent justification in law or in fact, sought to frustrate its creditor's reliance on an ambiguously worded agreement which appears to have been drafted by its lawyers. As a consequence, appellant has had to expend for attorney's fees alone ($6,066 in district court plus attorney's fees occasioned by this appeal) more than one-

---

5. Even after appellant obtained judgment in the District Court for the Southern District of New York, 54 F.R.D. 252 (S.D.N.Y.1971), appellee delayed further the date of payment. Appellant sought to enforce the judgment in the District Court for the Northern District of Ohio pursuant to 28 U.S.C. § 1963. The record shows that appellee employed various procedural devices to prolong the litigation, and to add further to appellant's attorney and other fees. *See* Order of Chief Judge Battisti, District Court for the Northern District of Ohio, No. C71–910 (1971), denying appellee's motion to quash registration of the judgment rendered by the Southern District of New York.

third the amount owed to her by appellee ($18,200)—again, with no defense proffered by appellee.

Appellee's course of conduct in this action manifests an intention to use our already over-crowded court dockets and the time-consuming judicial process as means to securing financial advantage. Such conduct bespeaks a willingness, therefore, to abuse the processes of the federal court system. This alone might well provide adequate grounds for awarding reasonable attorney's fees to one in appellant's position. *See* Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402 n. 4, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) (per curiam) ("a federal court may award counsel fees to a successful plaintiff where a defense has been maintained 'in bad faith, vexatiously, wantonly, or for oppressive reasons,' 6 Moore's Federal Practice 1352 (1966 ed.)"); Stolberg v. State Colleges of the State of Connecticut, 474 F.2d 485, 490 (2d Cir. 1973); Kahan v. Rosenstiel, 424 F.2d 161, 167 (3d Cir.), cert. denied, Glen Alden Corp. v. Kahan, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970); Rolax v. Atlantic Coast Line R.R., 186 F.2d 473, 481 (4th Cir. 1951). We need not invoke this Court's equity power, however, to determine the proper resolution of the present appeal; the agreement of the parties, as construed under applicable New York contract law, provides the answer to the question presented.

Applying the above-cited rules of construction to the contractual agreement before us, we conclude that a reasonable layman in appellant's position would have been justified in believing that "costs of suit" would include all the reasonable expenses of prosecuting a lawsuit, including attorney's fees. If appellee had wished to limit its liability for such expenses to mere court costs or filing fees, it would have used the unambiguous term "costs". We therefore hold that appellant is entitled to reasonable attorney's fees and that it was error for the district court to dismiss Claim 3 of her complaint. We remand the cause to the district court in order that appellant may present itemized evidence with respect to "costs of suit", including reasonable attorney's fees for prosecuting this action both in district court and on appeal. The district court shall enter judgment accordingly, in an amount so determined by it.