XEROX CORPORATION, Plaintiff,

v.

WEST COAST LITHO, INC., Guillermo Cabrera, and Jose D. Martin, Defendants.

6:16–CV–06032 EAW

United States District Court, W.D. New York.

Signed 04/25/2017

Tony R. Sears, Ward Greenberg Heller & Reidy LLP, Rochester, NY, for Plaintiff.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, United States District Judge

## INTRODUCTION

Plaintiff Xerox Corporation ("Plaintiff") bring this lawsuit against Defendants West Coast Litho, Inc. ("West Coast"), Guillermo Cabrera ("Cabrera"), who is the President of West Coast, and Jose D. Martin ("Martin") (collectively, "Defendants") for damages arising out of Defendants' breach and default under various agreements between the parties. (Dkt. 1). Plaintiff has obtained an entry of default against Defendants, who have failed to appear in this action. (Dkt. 13). Presently before the Court is Plaintiff's motion for entry of judgment pursuant to Defendants' affidavits of confession of judgment. (Dkt. 17). For the reasons set forth below, the motion is granted.

## BACKGROUND [1]

On January 14, 2010, West Coast and Plaintiff entered into an equipment finance lease agreement ("Finance Lease"), under which West Coast leased a printer and a server from Plaintiff. (Dkt. 1 at ¶ 8; Dkt. 1-1 at 2–6; Dkt. 17-1, Ex. 1 ("Settlement Agreement") at 1). After West Coast failed to make payments due under the Finance Lease, on December 21, 2011, Defendants entered into an Account Modification Agreement ("Modification Agreement"), which Cabrera and Martin executed as guarantors of West Coast's obligations under the Finance Lease. (Dkt. 1 at ¶¶ 10–12; Dkt. 1-1 at 8–26; Settlement Agreement at 1). Under the Finance Lease, as modified by the Modification Agreement, West Coast agreed to make certain monthly payments for the printer and server, as well as print charges. (Dkt. 1 at ¶¶ 13–15).

On June 14, 2014, Plaintiff, West Coast, and Cabrera entered into a Payment Plan and Guaranty ("Payment Plan"), pursuant to which West Coast agreed to make certain monthly payments to Plaintiff, and Cabrera guaranteed West Coast's payment and performance of its obligations under the Finance Lease, Modification Agreement, and Payment Plan. (Dkt. 1 at ¶ 29; Dkt. 1-1 at 28–33; Settlement Agreement at 1).

According to Plaintiff, West Coast, Cabrera, and Martin materially breached and defaulted on their respective payment obli-

---

1. The factual background is drawn from Plaintiff's complaint (Dkt. 1), the documents attached to the complaint (Dkt. 1-1), and the parties' Settlement Agreement (Dkt. 17-1, Ex. 1).

gations under the Finance Lease, Modification Agreement, and Payment Plan. (Settlement Agreement at 1).

Plaintiff commenced this action on January 20, 2016, by filing a complaint seeking damages for Defendants' breaches of the Finance Lease, Modification Agreement, and/or Payment Plan. (Dkt. 1). A summons was issued on January 21, 2016, as to each Defendant. (Dkt. 3). West Coast and Cabrera were served on January 21, 2016 (Dkt. 4; Dkt. 5), and Martin was served on February 2, 2016 (Dkt. 6). No Defendant answered Plaintiff's complaint. On April 1, 2016, after the deadlines for Defendants to file answers had passed, Plaintiff requested the Clerk of Court to enter default against each Defendant for failure to defend or otherwise appear in the action. (Dkt. 10; Dkt. 11; Dkt. 12). The Clerk entered a default as to Defendants on April 4, 2016. (Dkt. 13).

In May 2016, Plaintiff and Defendants entered into a Settlement Agreement in order to resolve Plaintiff's claims in this action. (Dkt. 17–1 at ¶ 9; Settlement Agreement). The parties agreed that the Settlement Agreement "shall be governed by the substantive law of the State of New York, notwithstanding any conflict of laws principles," and that jurisdiction and venue for any action arising out of the Settlement Agreement or any of the other agreements between them would be proper in this Court. (Dkt. 171; Settlement Agreement at ¶ 11). Defendants acknowledged their defaults under the Finance Lease, Modification Agreement, and/or Payment Plan. (Dkt. 17–1 at ¶ 11; Settlement Agreement at ¶ 3). They also agreed to pay Plaintiff a settlement in monthly payments according to a schedule set forth in paragraph 1 of the Settlement Agreement. (Dkt. 17–1 at ¶ 11; Settlement Agreement at ¶ 1).

The Settlement Agreement also provided that Cabrera (on behalf of himself and West Coast) and Martin (on behalf of himself) would execute affidavits of confession of judgment for debts owed to Plaintiff "arising from the facts alleged in Xerox's Complaint, dated January 15, 2016...." (Settlement Agreement at ¶ 7; Dkt. 17–1 at Ex. 2 ("Cabrera Aff."), Ex. 3 ("Martin Aff.")). The Settlement Agreement would be without effect if either Cabrera or Martin refused to execute the affidavits of confession of judgment. (Settlement Agreement at ¶ 7). Plaintiff agreed that, upon receipt of the executed Settlement Agreement and affidavits of confession of judgment, Plaintiff would 'ensure that a notice of dismissal is filed in [the instant case]. Any such dismissal will be without prejudice, and the Parties agree that the ... Western District of New York has and shall retain jurisdiction over any dispute arising out of the various agreements between the parties. (*Id.*)[2]

2. The Court notes that Plaintiff did not comply with its obligation under the Settlement Agreement to file a notice of dismissal in this lawsuit. (Settlement Agreement at ¶ 7). "Under New York law, a party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or, synonymously, where that party has committed a material breach." *Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 136 (2d Cir. 2016). Several factors inform the analysis of whether a failure to perform amounts to a material breach, including "the absolute and relative magnitude of default, its effect on the contract's purpose, willfulness, and the degree to which the injured party has benefitted under the contract." *Id.* "For a breach to be material, it must go to the root of the agreement between the parties." *Id.* (quotation marks omitted). Plaintiff's failure to seek dismissal of this lawsuit does not amount to a material breach because the magnitude of the default is not significant, and it does not go to the heart of the agreement. The dismissal was to be without prejudice, and the affidavits of confession of judgment specified that entry of judgment was authorized in the Western District of

West Coast and Cabrera authorized entry of judgment against them "in the sum of $107,916.33, or that amount less than $107,916.33 that remains due and owing to Xerox Corporation ... on the date the confession of judgment is presented to the Clerk for entry, whichever is less, plus costs and attorneys' fees." (Cabrera Aff. at ¶ 2). Martin authorized entry of an identical judgment against him. (Martin Aff. at ¶ 1). Defendants consented to jurisdiction and venue and authorized entry of judgment in this district. (Cabrera Aff. at ¶ 4; Martin Aff. at ¶ 2).

According to Plaintiff, "Defendants have made only one payment in the amount of $4,278.58 toward their obligations under the Settlement Agreement" (Dkt. 17–1 at ¶ 16), but otherwise have not made the payments that were due in the months of July 2016 through January 2017 (*id.* at ¶ 17).

By letter dated August 8, 2016, counsel for Plaintiff notified Defendants that they had failed to make settlement payments in accordance with the Settlement Agreement, and, as a result, were in breach of that agreement. (*Id.*, Ex. 4 at 1). Counsel also notified Defendants that, in accordance with the Settlement Agreement, they had 15 days in which to cure the breach and default; if Defendants failed to do so, Plaintiff intended to file for judgment based on the affidavits of confession of judgment. (*Id.*).

New York. Had Plaintiff complied with the dismissal provision, it presumably would have filed a new lawsuit in the Western District of New York in order to enforce the settlement agreement. Thus, the posture of the case is not materially different based on Plaintiff's failure to seek dismissal.

3. On October 18, 2016, after six months of inactivity on the docket of this case, the Court ordered Plaintiff to show cause why the case should not be dismissed for failure to prosecute. (Dkt. 14). Plaintiff responded, requesting

On January 18, 2017, Plaintiff filed a motion for entry of judgment pursuant to Defendants' affidavits of confession of judgment. (Dkt. 17).[3] According to Plaintiff, "[d]espite being notified of their default, Defendants have not cured their default and have not made any further payment to Xerox pursuant to the Settlement Agreement." (Dkt. 17–1 at ¶ 20). Accompanying the motion is a declaration by Plaintiff's counsel that details the costs and attorneys' fees incurred by Plaintiff in this lawsuit, which total $15,910.50. (Dkt. 17–2). Plaintiff served its motion papers on Defendants. (Dkt. 17–4).

By text order dated January 20, 2017, the Court set a deadline of February 24, 2017, for Defendants to respond, and a deadline of March 3, 2017, for Plaintiff to file a reply. (Dkt. 18). The Court also ordered Plaintiff to serve the text order on Defendants. (*Id.*). On January 30, 2017, Plaintiff filed a certificate of service indicating that a copy of the text order had been mailed to each Defendant. (Dkt. 19). Defendants have not responded to the motion.

### DISCUSSION

"Judgment by confession is a product of state law, having no analog in the federal rules." *FDIC v. Deglau*, 207 F.3d 153, 159 (3d Cir. 2000). The Federal Rules

that the Court enter judgment pursuant to the affidavits of confession of judgment. (Dkt. 15). By text order dated December 9, 2016, the Court found that Plaintiff had adequately responded to the Court's Order to Show Cause and declined to dismiss for failure to prosecute. (*Id.*). However, the Court declined to entertain Plaintiff's request to enter judgment, finding the request procedurally defective for lack of a notice of motion and lacking any articulation of the Court's authority to grant the requested relief. (Dkt. 16).

of Civil Procedure do not contain any specific provisions that govern entry of judgment by confession. Nevertheless, "[a] federal court has the power and authority to enter a judgment pursuant to a confession of judgment as long as subject-matter jurisdiction exists and the confession of judgment was voluntarily, knowingly and intelligently made." *LOL Fin. Co. v. Carrigan*, No. 0:16-CV-000651(SRN/TNL), 2016 WL 4154339, at *2 (D. Minn. Aug. 5, 2016); *Orlando Residence, Ltd. v. Nelson*, 565 Fed.Appx. 212, 222 (4th Cir. 2014) ("Federal courts have the power to enter confession judgments, as has been recognized by courts time and again."); *Nat'l Leasing Corp. v. Williams*, 80 F.R.D. 416, 418 (W.D. Pa. 1978) ("There is no legal prohibition against entering judgment by confession in a court of the United States, if federal jurisdiction exists."); *see also D.H. Overmyer Co., Inc. v. Frick Co.*, 405 U.S. 174, 185, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972) (holding that a confession of judgment provision is not per se unconstitutional and may be valid where the confession was "voluntary, knowing, and intelligently made"); *Alland v. Consumers Credit Corp.*, 476 F.2d 951, 958 (2d Cir. 1973) ("[A]lthough the district court correctly ruled that the entry of a confessed judgment is a matter of procedure where the federal rules govern for purposes of *Erie*, questions regarding the interpretation to be given language in the confession of judgment are governed, as are other written agreements, by substantive state law.").

New York law provides, subject to one exception not relevant to this case,[4] that "a judgment by confession may be entered, without an action, either for money due or to become due, or to secure the plaintiff against a contingent liability in behalf of the defendant, or both, upon an affidavit executed by the defendant." NY CPLR 3218(a). Defendant's affidavit must contain certain information. *See id.* First, it must state "the sum for which judgment may be entered, authoriz[e] the entry of judgment, and stat[e] the county where the defendant resides or if he is a non-resident, the county in which entry is authorized." *Id.* 3218(a)(1). Second, "if the judgment to be confessed is for money due or to become due," the affidavit must state "concisely the facts out of which the debt arose and show[ ] that the sum confessed is justly due or to become due." *Id.* 3218(a)(2). Third, "if the judgment to be confessed is for the purpose of securing the plaintiff against a contingent liability," the affidavit must state "concisely the facts constituting the liability and showing that the sum confessed does not exceed the amount of the liability." *Id.* 3218(a)(3).

■ The affidavits executed by Cabrera and Martin conform to the requirements of CPLR 3218. They both authorize entry of judgment in the amount of $107,916.33, or the amount less than that sum that remains due to Plaintiff on the date the confession of judgment is presented for entry, whichever is less, plus costs and attorneys' fees. (Cabrera Aff. at ¶ 2; Martin Aff. at ¶ 1). Although the affidavits do not authorize entry of judgment in a particular county, they do authorize entry of judgment in the Western District of New York. (Cabrera Aff. at ¶ 4; *Martin Aff.* at ¶ 2). The affidavits concisely state the facts and circumstances that gave rise to the debt. (Cabrera Aff. at ¶ 5; Martin Aff. at ¶ 3).

In addition, the Court has subject matter jurisdiction in this case based on 28 U.S.C. § 1332. Complete diversity of citi-

---

4. The exception is found in NY CPLR 3201, which concerns confessions of judgment before default on certain installment contracts. *See* CPLR 3201, 3218.

zenship exists between the parties: Plaintiff is a New York corporation, while West Coast is a California corporation with its principal place of business in that state, and Cabrera and Martin are both citizens of California. (Dkt. 1 at ¶¶ 2, 4–7). The amount in controversy exceeds $75,000. (*Id.* at ¶¶ 1, 2).

Because Defendants have not appeared in this case, the Court has little information on which to assess whether Cabrera and Martin voluntarily, knowingly, and intelligently executed the affidavits of confession of judgment. Nevertheless, nothing in the record before the Court suggests that Cabrera or Martin executed the affidavits of confession of judgment in a manner that was not voluntary, knowing, and intelligent. Both affidavits are signed and notarized. (Cabrera Aff. at 3; Martin Aff. at 2).

Based on the foregoing, Plaintiff is entitled to entry of judgment against Defendants based on the affidavits of confession of judgment in the amount of $119,548.25. That sum is based on the following calculations. The Settlement Agreement authorized payment of $107,916.33, less any amounts that have been paid by Defendants to Plaintiff. (Cabrera Aff. at ¶ 2; Martin Aff. at ¶ 4). Subtracting Defendants' single payment of $4,278.58 to Plaintiff (Dkt. 17–1 at ¶ 16) yields $103,637.75. Adding the costs and fees totaling $15,910.50, as detailed in the declaration by counsel for Plaintiff (Dkt. 17–2), yields a total of $119,548.25 due under the affidavits of confession of judgment.

## CONCLUSION

Based on the foregoing, the Court grants Plaintiff's motion for entry of judgment pursuant to Defendants' affidavits of confession of judgment. (Dkt. 17). The Clerk of Court is directed to enter judgment in favor of Plaintiff and against Defendants, jointly and severally, in the amount of $119,548.25.

SO ORDERED.