EMANUEL JANOS et al., Appellants-Respondents, *v.* HILDRETH G. PECK, Respondent-Appellant.

First Department, July 9, 1964.

*Isadore B. Hurwitz* for appellants-respondents.

*Harry H. Harris* of counsel (*Harris & Post,* attorneys), for respondent-appellant.

EAGER, J.   This appeal is from an order denying plaintiffs' motion and defendant's cross application for summary judgment in a declaratory judgment action.

The parties are cotenants, each owning a one-fifth undivided interest, in a family-owned commercial building.   On April 27, 1954, following the defendant's procurement of a judgment establishing her ownership of an undivided one-fifth interest in the premises, all of the cotenants entered into a contract settling the claim for services and the accounts of Emanuel and Seymour Janos (two of the cotenants and two of the plaintiffs here) in the management of the building for a period from December 1, 1949 to September 30, 1953, providing for continuance of their management of the building for a period of 10 years and for the payment of $500 monthly by them to the defendant and to another cotenant, Dorothy Lester, in full payment of their respective shares of the rents, issues and profits of the premises.   The said Emanuel and Seymour Janos are brothers and Emanuel is an attorney.   Incidental to the aforesaid contract and on the same date, the defendant and the other cotenants entered into a supplemental agreement appointing said plaintiffs exclusive managing agents and detailing their authority and powers in the matter of the management of the premises; and, in the course of such management, they used and wrote under the name of Janos & Janos.

On May 8, 1963, Janos & Janos wrote to defendant proposing a refinancing with the East River Savings Bank of a first mortgage loan against the premises, and the defendant, in response to the letter, signed and returned an enclosed written authorization for the closing of the new mortgage loan.   The complaint demands judgment declaring that the " instrument [the letter]

dated May 8, 1963 is a valid and binding contract; that by virtue thereof the defendant is obligated  *  *  *  to close the mortgage pursuant to the commitment obtained from the East River Savings Bank and that the agreements with respect to the management of the premises [by Janos & Janos] and distribution of the rents and profits of the premises, both dated April 27, 1954, are extended for an additional period to coincide with the terms of the East River Savings Bank mortgage commitment ", viz., for a period of 10 years to December 1, 1974.

Subsequent to the commencement of the action, the defendant, without prejudice, executed the necessary papers to carry out the mortgage commitment and that transaction has been closed. There remains, however, the question of whether or not the parties have entered into a binding contract to extend the April 27, 1954 contract and the management agreement for the 10-year period. Upon the argument, counsel representing all parties requested a determination by the court of whether or not such a contract was effected by the Janos & Janos letter of May 8, 1963 and the defendant's written authorization in response thereto. Since the controlling facts are not in dispute, we should dispose of this issue here and now.

Broad and liberal use of the partial summary judgment procedure is in furtherance of the general objectives of CPLR (see CPLR 104). The determination by the court on a summary judgment motion of pivotal and controlling issues of law not tied in with disputed facts will " aid in the disposition of the action " (see CPLR 3212, subd. [g]). So utilized, the partial summary judgment procedure affords the opportunity of promptly settling issues which can be disposed of as a matter of law, and furthermore, furnishes a means for the withdrawing from the case of sham and feigned issues of fact and of law which might have a tendency to confuse and complicate the trial. Thereby, some constructive results may be salvaged from the judicial efforts expended on a motion for summary judgment. (See *Luria Steel Trading Corp.* v. *Ford,* 9 F. R. D. 479, 481; *Yale Transp. Corp.* v. *Yellow Truck & Coach Mfg. Co.,* 3 F. R. D. 440, 441.)

Upon such a motion in a declaratory judgment action, the partial summary judgment procedure should be fully utilized for the purpose of declaring and settling the rights and obligations of the parties, insofar as they are not dependent upon the resolution of matters of fact in bona fide dispute, with a remission for trial only of those issues of law and fact which may not be determined on the basis of undisputed facts. (See CPLR 3212, subds. [e], [g].) Where, among the issues presented on

such a motion, there is a question as to the construction of a written contract between the parties and the determination of that question may be reached by reference to and a consideration of the plain and unambiguous wording of the contract, the question, as one of law, should be then and there resolved. (See *Stone* v. *Goodson,* 8 N Y 2d 8, 13; *Tufano Contr. Corp.* v. *Port of New York Auth.,* 18 A D 2d 1001; *Bonime* v. *Cummings,* 5 A D 2d 976.) This will generally result in simplifying the issues for the trial and will " aid in the disposition of the action ".

The Janos & Janos letter of May 8, 1963, addressed to defendant, purporting to set forth the desirability of refinancing the first mortgage loan against the premises, with the statement of the terms of the proposed new first mortgage to the East River Savings Bank to run for a period of 10 years, contained paragraphs stating that:

" At the present time we are paying approximately $29,000.00 annually to the bank for interest and principal. Under the terms of the new mortgage we will have to pay approximately $45,000.00 annually for interest and amortization. The increased sum of $16,000.00 will be off-set by a reduction in wages through the conversion of the elevators *and you will continue to receive your monthly payments of $500.00 under the same arrangements as in the past for the entire term of the new first mortgage.*

" It is our firm opinion that this new first mortgage will be a very good deal for all of us and therefore we request your written consent without undue delay to close this transaction." (Italics added.)

Defendant, in response to the letter, signed and returned a writing prepared by and addressed to Janos & Janos, reading as follows: " You are authorized to close a new mortgage loan covering premises 270 West 39th Street, New York City, as outlined in your letter addressed to me dated May 8, 1963."

Neither the May 8 letter nor the writing signed by the defendant specifically mentioned any extension of the April 27, 1954 contract and management agreement. The plaintiffs Janos & Janos did not by the letter purport to offer and bind themselves to any such extension. Furthermore, the writing signed by the defendant, in the words which were selected by the plaintiff attorneys, was expressly limited to an authorization by defendant to the plaintiffs " to close a new mortgage loan * * * as outlined in your letter ". The wording is plain and unambiguous and therefore a reference to extraneous facts is unnecessary to a determination as to the construction and effect thereof. " It has long been the rule that when a contract is clear in and of itself, circumstances extrinsic to the document

may not be considered (*General Phoenix Corp.* v. *Cabot,* 300 N. Y. 87) and that where the intention of the parties may be gathered from the four corners of the instrument, interpretation of the contract is a question of law and no trial is necessary to determine the legal effect of the contract (*Brainard* v. *New York Central R. R. Co.,* 242 N. Y. 125; *Matter of Western Union Tel. Co.* [*American Communications Assn.*], 299 N. Y. 177)." (*Bethlehem Steel Co.* v. *Turner Constr. Co.,* 2 N Y 2d 456, 460.) Under the circumstances, the only purpose served by receiving parol evidence as to the intent of the parties would be to expand the agreement of the defendant rather than to explain or interpret it. The language of the contract must control, "and neither the court nor the jury has the right to construct, by implication or otherwise, a new contract in place of that deliberately made by the parties." (2 N. Y. Law of Contracts, § 798.)

Furthermore, the plaintiffs would not be helped by a claim of ambiguity with respect to whether or not the Janos & Janos letter and defendant's responsive writing intended an extension of the April 27, 1954 contract and management agreement. The letter and the writing signed by defendant were both drafted by plaintiffs Janos & Janos. Being in the words and language selected by them, these writings are to be strictly construed as against them. (See 2 N. Y. Law of Contracts, § 818.) "Since one who speaks or writes, can by exactness of expression more easily prevent mistakes in meaning, than one with whom he is dealing, doubts arising from ambiguity of language are resolved in favor of the latter". (4 Williston, Contracts [3d ed.], § 621, pp. 760–761.) Here, it stands undisputed that these plaintiffs, one of whom was an attorney, are responsible for an uncertainty, if any, in the wording used, and there is no suggestion of any extrinsic proofs which would justify a broadening of the wording to support a contract as claimed by them.

In light of the foregoing, it is concluded that the April 27, 1954 contract was not extended by virtue of a contract arising out of the May 8, 1963 letter and the defendant's written authorization responsive to the same; and judgment so declaring should now be rendered.

The question then arises as to the date of the expiration of the April 27, 1954 contract. This issue should also be determined and set at rest at this time. The question was briefed and argued by all parties, and they request a declaration thereon.

The provision in said April 27, 1954 contract for the settlement of the accounts and the claim for services of the plaintiffs Emanuel and Seymour Janos in the matter of their management

of the premises, covered the period from December 1, 1949 to September 30, 1953. It was then provided that Janos & Janos should "continue to have sole and exclusive charge and management of the aforesaid property * * * for a period of 10 years" with the provision that they should receive for their services "a sum equal in the aggregate to ten (10%) per cent of the gross rentals"; that "in consideration of the obligation assumed by Emanuel Janos and Seymour Janos" to manage the premises, the defendant "agrees to accept from the rents, issues and profits of the said premises the sum of Five Hundred and 00/100 ($500.00) Dollars a month beginning as of October 1st 1953"; that the cotenant Dorothy Lester agrees to accept similar payments; and that "the aforesaid payments * * * shall be in full payment of their respective shares of the rents, issues and profits of the said premises", with provision that the balance of the rents, issues and profits "shall be divided equally among Minnie Janos, Emanuel Janos and Seymour Janos."

It is significant that, after provision for the settlement of the accounts and claims of Emanuel and Seymour Janos as of September 30, 1953, it was provided that they should "continue" to manage the property for the 10-year period and that the $500 monthly payments to the defendant and Dorothy Lester were to be made "beginning as of October 1st 1953." It is plain to see, that in fixing the 10-year period, the parties were speaking of the period "continuing" from the time of the settlement of the accounts and "beginning" as of October 1, 1953.

Construing the April 27, 1954 contract as a whole, and upon the undisputed facts, we conclude that it was written for a period of 10 years to commence on October 1, 1953 and to terminate on September 30, 1963, and that defendant is entitled to a judgment so declaring.

Finally, there is the matter of the defendant's counterclaim to compel Janos & Janos to account for and pay over to defendant one fifth of the sum set up and deducted by said plaintiffs during the 10-year period from the rents, issues and profits as and for depreciation of the building and improvements. The plaintiffs move for summary judgment dismissing this counterclaim.

There was nothing said in the April 27, 1954 contract and the management agreement about depreciation of the improvements or a deduction therefor from the rents, issues and profits nor with respect to the accountability of Janos & Janos for the same. The plaintiffs point to the provision of the contract whereby defendant agreed to accept the monthly installments

of $500 in full payment of her share of "rents, issues and profits" and claim that, by virtue thereof, and inasmuch as depreciation is set up and carried on the books merely as a matter of bookkeeping and income tax accountancy, the defendant should not be concerned with the depreciation item and is barred from any claim thereto. On the other hand, it is the defendant's position that the phrase "rents, issues and profits" has reference only to the net profits arrived at after deduction of all carrying charges including depreciation.

Reading the contract as a whole,* there is ambiguity in the meaning and use of the words "rents, issues and profits", and there is an uncertainty as to whether or not, in the use of such words, the parties had any understanding whatever as to the treatment of the depreciation factor. The intent of the parties with regard to a deduction for depreciation of their building and improvements may not be determined on the record here. The court will be obliged to look to the facts under consideration by the parties and the surrounding circumstances at the time of the making of the April 27, 1954 contract (see 10 N. Y. Jur., Contracts, §§ 219, 220, and cases cited) as well as the conduct and practice of the parties in carrying out the terms of the contract. "The practical construction made by the parties to a contract which is ambiguous is entitled to serious consideration as a valuable aid in determining its true meaning." (See 10 N. Y. Jur., supra, § 221, pp. 134–135.) Furthermore, the plaintiffs should be given full opportunity to develop their theory that the defendant is barred by ratification and estoppel from making any claim with respect to the depreciation deduction.

Thus, there are issues of fact precluding a determination or declaration now with respect to the defendant's counterclaim seeking an accounting by plaintiffs Emanuel and Seymour Janos. When the language employed in a contract "is not free from ambiguity, or when it is equivocal and its interpretation depends upon the sense in which the words were used in view of the subject to which they relate, the relation of the parties

---

* Provisions of the contract, other than those pertaining to the distribution of the "rents, issues and profits", contribute to the ambiguity here. The contract provides that the cost of "all capital improvements * * * shall be borne by the parties equally, share and share alike", and there is also a provision that in the case of the sale of the property, each party "shall be entitled to receive one-fifth of the net sale proceeds." But, notwithstanding that the depreciation allowance is generally considered a relevant factor in the matter of restoring depreciated "capital improvements" and in computing "net sale proceeds" on a sale of assets, the contract is entirely silent concerning the effect of the taking of such allowance on behalf of the parties.

and the surrounding circumstances properly applicable to it, the intent of the parties becomes a matter of inquiry, and the interpretation of the language used by them is a mixed question of law and fact ''. (*Kenyon* v. *Knights Templar & Masonic Mut. Aid Assn.*, 122 N. Y. 247, 254; *Lachs* v. *Fidelity & Cas. Co. of N. Y.*, 306 N. Y. 357, 364.) Under such circumstances, summary judgment may not ordinarily be granted. (*National Bank of N. Y.* v. *Schinasi*, 24 Misc 2d 444, 448 and cases cited. Also *Rochester Capital Leasing Corp.* v. *Barber,* 19 A D 2d 114, 116.)

The order, dated February 6, 1964, should be modified, on the law, to provide that the motion and the cross application for summary judgment are granted to the extent of directing judgment declaring that the April 27, 1954 contract between the parties was not extended by the alleged contract set forth in the May 8, 1963 letter from Janos & Janos to defendant, and defendant's written authorization with respect thereto, and declaring that the April 27, 1954 contract expired on September 30, 1963; directing that the issues arising under defendant's counterclaim be remanded for trial; and the order should otherwise be affirmed, with $20 costs and disbursements to the defendant.

RABIN, J. (dissenting in part). I dissent in part. I would not grant summary judgment to the defendant declaring that the management contract of April 27, 1954 was not extended.

Plaintiffs asked that summary judgment be granted in favor of them, while defendant sought the same relief in her favor. Counsel for both sides state that there is sufficient in the papers to enable the court to dispose of the issue. However, their statement to that effect does not make it so. I am of the opinion that there is not sufficient before us to permit a finding at this time as to whether or not the management contract was extended.

As indicated by the majority, a determination of the question at issue must depend essentially on how we construe the letter from Janos & Janos, dated May 8, 1963, addressed to the defendant and the latter's reply to that letter. The majority characterized the wording of those documents as being '' plain and unambiguous.'' I do not agree. I think that they are ambiguous.

The proposal of the plaintiffs, contained in their letter of May 8, provided, *inter alia,* that if the defendant agreed and consented to the new first mortgage, she would '' continue to receive [her] monthly payments of $500.00 under the same arrangements as in the past for the entire term of the new first mortgage.'' The response, in authorizing the closing of the new

mortgage, states that such authorization is " as outlined in your letter addressed to me dated May 8, 1963."

As I read the aforesaid documents they do not indicate clearly what the parties intended, if anything, relative to the question of renewal of the management agreement. Considering the language of the document in its entirety, its ambiguity is readily evident. May the statement with respect to the continuance of the monthly payments of $500 be considered a commitment on the part of the plaintiff? It would appear that it could be so considered. If so, does the language that the payments should be made " under the same arrangements as in the past ", mean under the same terms as the original contract and, therefore, connote a continuance of the management contract under which the obligation to make such monthly payments was assumed? While it cannot be said with certainty, it may well be that such is the meaning to be ascribed to that language. Similarly, what is the meaning and significance of the clause " for the entire term of the new first mortgage "? Does it mean that the original contract is to be renewed on the same terms for the life of the mortgage? Again, there is ambiguity which needs resolution.

Since I find the existence of these ambiguities, I am as heretofore stated, of the opinion that more than the writings and the affidavits submitted is required to enable their resolution. While the attorneys have stated that they believe this court is able to make a decision on this record, they have not said that there is no additional evidence available which would be of assistance in resolving the ambiguities. Short of such a statement I believe a trial is required.

If I were required to make a decision on the record before us, I would be inclined to grant judgment for the plaintiffs. It could very well be that if subsequent to the closing of the mortgage the plaintiffs failed to make payment of $500 per month to the defendant, they would have great difficulty in defending an action based upon the commitment that could be spelled out from the documents. It would seem to me that the papers spell out a continuance of the management contract rather than the contrary.

However, as I have indicated above, I do not think that the papers are quite that clear. I believe a trial is in order to assist in determining the intention of the parties.

Accordingly, I vote to deny summary judgment on the question of whether the management contract was renewed, without prejudice however, to a renewal of an application for such relief

upon additional papers, if the parties or any of them are so advised.

McNALLY, STEVENS and STALEY, JJ., concur with EAGER, J.; RABIN, J. P., dissents in part in opinion.

Order, entered on February 7, 1964, modified, on the law, to provide that the motion and the cross application for summary judgment are granted to the extent of directing judgment declaring that the April 27, 1954 contract between the parties was not extended by the alleged contract set forth in the May 8, 1963 letter from Janos & Janos to defendant, and defendant's written authorization with respect thereto, and declaring that the April 27, 1954 contract expired on September 30, 1963; directing that the issues arising under defendant's counterclaim be remanded for trial; and the order is otherwise affirmed, with $20 costs and disbursements to the defendant. Settle order on notice.