**RALPH HOCHMAN & COMPANY,**
Plaintiff,

v.

**FORT STANWIX MFG. CO., Inc.,**
Defendant.

Civ. A. No. 9702.

United States District Court
N. D. New York.

May 16, 1967.

See also D.C., 284 F.Supp. 1000.

Grossman, Grossman & Grossman, Syracuse, N. Y., for plaintiff.

Tierney, Gannon & Smith, Utica, N. Y., for defendant.

## MEMORANDUM-DECISION AND ORDER

PORT, District Judge.

In this suit for brokerage commissions, submitted on a stipulation of facts, the parties are in accord as to the facts and the applicable law. The plaintiff bases its claim to relief on a brokerage agreement (Exhibit A) and a contract of sale (Exhibit B), both of which are incorporated in plaintiff's complaint and discussed below. The parties are in court because they reach contrary results in applying the conceded legal principles to the stipulated facts; each contends that the factual and legal situation mandates a verdict in its favor.

Jurisdiction of the court is based on diversity of citizenship.

### THE BROKERAGE AGREEMENT

On or about May 23, 1961, the plaintiff accepted a proposal from the defendant, prepared by the plaintiff's attorney,[1] making the plaintiff Fort Stanwix's agent for the sale of the defendant business as a going concern or the sale of its physical assets.

Paragraph 2 of the agreement fixes the "upset price" of the company "as a going business" at $125,000.00, stipulating that the sale would not include cash, accounts receivable, work in process, or real estate and cranes with attendant hoists; it further provides: "any sum received in excess of the upset price to be divided equally between your-

---

1. The parties concede that the proposal accepted by the plaintiff broker, although in form emanating from the defendant, was in fact prepared by the broker's attorneys.

self [the plaintiff] and the Corporation [the defendant] * * *."

Paragraph 5 of the agreement provides:

In the event that you are not successful in selling the company as a going business and you sell the physical assets, you will guarantee them [the defendant] $100,000.00; the next $12,500.00 will be paid to you and the excess of $112,500.00 will be divided equally between you and the Fort Stanwix Mfg. Co., Inc. or its shareholders; all sums received from the sale of assets as aforesaid, shall be deposited in an escrow account in the Rome Trust Co. and you guarantee that the full sum of $100,000.00 shall be deposited in said account on or before December 1, 1961.

Paragraph 13 provides:

In the event you produce a satisfactory purchaser for the real estate, the minimum price of same to the Company shall be $50,000.00 and any excess over that figure shall accrue exclusively to you. Real estate will include light fixtures and cranes with attendant hoists. We will agree to furnish good and marketable title to same.

### THE CONTRACT OF SALE

By an agreement dated August 12, 1961, Fort Stanwix agreed to sell and Mandell Industries Corporation agreed to purchase all the defendant's assets. As part of the agreement, the seller and its stockholders agreed not to compete with the purchaser in the state of New York for ten years, and further contracted to save the purchaser harmless against any liability caused by any default of the sellers.

The purchase price was fixed at $511,-396.99 plus a minor adjustment. At the option of the defendant sellers, the purchase price was to be paid in cash, in stock of the purchaser, or in a combination of cash and stock of the purchaser.[2]

Paragraph 12 of the contract of sale provides:

It is mutually agreed that the purchase price covers the following:

  (a) Land

  (b) Buildings and improvements

  (c) One (1) Station wagon

  (d) All machinery and other personal property as itemized in Schedule A attached hereto and made a part hereof.

  (e) All cash and Accounts Receivable as of this date.

The contract of sale consequently did not fall into the patterns outlined in the brokerage agreement; it was a sale of the defendant as a going concern or business, but it included in that sale items which paragraph 2 of the brokerage agreement would have expressly excluded from a sale as a going business and upon which no commissions were to be paid.

The sale was to be closed on or before October 31, 1961; the purchaser was put in possession of the business upon the execution of the agreement and was to complete all pending orders.

The agreement had the usual provisions with reference to the transfer documents to be used on the closing.

The purchaser was to have the right to use the name of Fort Stanwix Manufacturing Co., Inc., at its option, and the seller agreed to change its name to a non-conflicting name or dissolve the corporation following the transfer of the assets.

Paragraph 6 of the sales contract provides:

The parties hereto acknowledge that the broker who brought about this transaction is Ralph Hochman and Company, 52 Edison Place, Newark 2, New Jersey, and that he shall be paid by the Seller under the terms of a brokerage contract dated May 23, 1961 as a sale of a going business.

---

2. The seller later exercised its option to require the purchase price in cash.

With the exception of the above-quoted paragraph the contract makes no reference to the time when commissions are to be paid, or their amount.

### THE STIPULATED FACTS

In addition to the jurisdictional facts, the parties have stipulated that the brokerage agreement was executed by them; that the plaintiff procured a purchaser of the defendant's business as a going business resulting in the contract of sale (Exhibit B); that as a result of the purchaser's default the transaction was not closed; that the default occurred without the fault of either the plaintiff or defendant; that the defendant seller never received any part of the purchase price; that if the plaintiff broker is entitled to judgment it shall be in the sum of $47,500.00; and that there was no further evidence "which would alter, modify, delete, change, or explain either Exhibits A or B."

### DISCUSSION

The plaintiff contends that it fulfilled its contract to find a satisfactory buyer for the defendants' business when the contract of sale was executed, and that it then became entitled to its commissions. The plaintiff further contends that the purchaser's default under the contract of sale in no way affects its rights, citing Goodman v. Margolies, 159 N.Y.S. 834 (App.Div.1916).

The defendant does not quarrel with the principle of law thus stated, but contends that, while that is the general rule, an exception applies under the facts in this case.

Both parties agree that Colvin v. Post Mortgage & Land Co., 225 N.Y. 510, 122 N.E. 454 (1919) sets forth the general rule and exception. In that case the court stated:

> Ordinarily, when the seller has accepted the buyer brought him by his broker, when they have agreed upon terms, and executed the contract of sale, the broker's work is done and he has earned his commissions. A failure to complete thereafter, whether due to the fault of the buyer or of the seller, will not deprive him of them. * * * But by their contract the parties may vary this rule to any extent. * * *

Ibid. at 516, 122 N.E. at 455.

The narrow issue in this case is succinctly stated in the plaintiff's reply memorandum of law: "the result of this case turns not on the applicability of the general rule, but rather on the alleged applicability of the exception." The materials available to resolve this narrow issue are practically confined to the language used in Exhibits A and B.

Paragraph 6 of the contract of sale acknowledges the plaintiff as the procuring cause of the contract and provides that payment should be made to him under the terms of the brokerage agreement (Exhibit A) "as a sale of a going business."

Under the brokerage agreement, in a sale as a going business, the broker would be entitled to one-half of "any sum received in excess of $125,000.00"; but cash, accounts receivable, work in process, real estate, and cranes with attendant hoists were not to be part of the property sold.

Since the sales contract price did include the latter items, the sales contract's reference to payment of commissions "by the Seller under the terms of a brokerage contract dated May 23, 1961 as a sale of a going business" obviously was not for the purpose of setting the amount of commissions. The fact that the parties to the present action have stipulated that any judgment in favor of the plaintiff broker shall be in the sum of $47,500.00 further points this up. Under these circumstances, it must be concluded that paragraph 6 of the contract of sale evidences the expectation of the seller, at least, that the time for paying broker's commissions would be arrived at under paragraph 2 of the brokerage agreement.

Upon reading the brokerage agreement in its entirety, its language indicates an intention that the commis-

sions were to be computed upon amounts actually received by the seller, and that they were to be earned at that time, rather than at the time and on the basis of any purchase offer and acceptance. In addition to fixing the commissions at one-half of any sum received in excess of $125,000.00 on the sale as a going business, the brokerage agreement also provided that upon a sale of the physical assets Hochman would guarantee the defendants $100,000.00 before he received anything, and would further guarantee that the $100,000.00 would be deposited in an escrow account on or before December 1, 1961, the termination date of the exclusive agency given to the plaintiff broker for the sale of the physical assets. The defendant cites cases, which he claims use similar language to that used in the brokerage contract, to support his contention that the plaintiff is not entitled to any commissions because the defendant had not "received" the purchase price.[3]

The plaintiff broker argues that the contract might have been drawn in language which would more clearly condition a recovery on the defendant seller's actually receiving the purchase price. While it is true this could have been done, the fact of the matter is that it wasn't. It thus becomes necessary to determine the effect to be given the language used. The parties agree that in case of ambiguity in the language used it should be construed against the drafter.[4]

If this principle need be applied because of ambiguity (and it is felt it need not), the contract would have to be construed against the broker, since it is conceded that the brokerage agreement was prepared by the plaintiff's attorney.

However, a literal interpretation of the contract leads the court to the same result. Since the provision dividing the excess of the amount received over $125,000.00 has not been applied insofar as fixing the amount of the commissions, some other application is necessary to prevent it from becoming meaningless.

It is a cardinal rule of construction that a court should not "adopt an interpretation" which will operate to leave a "provision of a contract * * without force and effect". Muzak Corp. v. Hotel Taft Corp., 1 N.Y.2d 42, 46, 150 N.Y.S.2d 171, 174, 133 N.E.2d 688, 690.

Corhill Corporation v. S. D. Plants, Inc., 9 N.Y.2d 595, 599, 217 N.Y.S.2d 1, 3, 176 N.E.2d 37 (1961). The only other meaning which can be attributed to the reference to the sale as a going business in the sales contract is that claimed by the defendant. While not binding on the broker, the reference does evidence the seller's expectation, reasonable enough when the language of the brokerage agreement is considered.

Giving the language used its normal and common meaning, reading the brokerage agreement as a whole and giving effect to its general purpose, requires finding that under the agreement commissions were not earned because the purchase price was not paid. This is a case in which it can be said that the parties intended "no collections, no commissions, [which] has a fair business appeal to both seller and broker." Colvin, supra, 225 N.Y. at 517, 122 N.E. at 456.

The court adopts as its finding of fact the stipulations of fact of the parties, together with the findings of fact appearing herein.

---

3. See e. g., Wagner v. Derecktor, 306 N.Y. 386, 118 N.E.2d 570 (1954) ("divided equally" language) and Colvin v. Post Mortgage & Land Co., 225 N.Y. 510, 122 N.E. 454 (1919) (commissions "payable * * * from each installment * * * when the same is received").

4. Darrow v. Family Fund Society, 116 N.Y. 537, 22 N.E. 1093, 6 L.R.A. 495 (1889) ; Janos v. Peck, 21 A.D.2d 529, 251 N.Y.S.2d 254, aff'd 15 N.Y.2d 509, 254 N.Y.S.2d 115, 202 N.E.2d 560 (1964) ; Gillet v. Bank of America, 160 N.Y. 549, 55 N.E. 292 (1899).

## CONCLUSIONS OF LAW

1—The court has jurisdiction of the parties hereto and the subject matter of this action.

2—Judgment shall be entered by the Clerk pursuant to Rule 58, Fed.R.Civ.P. in favor of the defendant denying all relief to the plaintiff.

So ordered.