The **ADDISON TERRY COMPANY, INC.**, Plaintiff,

v.

**N.F.L. FILMS, INC.**, Defendant.

No. 68 Civ. 522.

United States District Court, S. D. New York.

Oct. 18, 1974.

Whitman & Ransom, New York City, for plaintiff; by John C. Young, New York City, of counsel.

8. *Cf.* Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964).

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendant; by Robert S. Smith, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge.

This is a contract action which was instituted some six years ago. By my decision of September 11, 1974, the disputed issues of liability and damages were bifurcated and a non-jury trial was held on the question of liability only on September 23, 1974. I have reviewed the various depositions submitted at that trial along with all of the exhibits. The question to be decided is a very narrow one.

The facts are fairly simple. The defendant is a "subsidiary" of the National Football League (hereinafter "the N.F.L.") in that the N.F.L. owners own the defendant corporation N.F.L. Films, Inc. (hereinafter "N.F.L.F."). N.F.L.F. was apparently set up to take and/or distribute motion pictures of the N.F.L. football games for promotional and other purposes.

In the early summer of 1966, the president of the plaintiff corporation, Addison Terry, a self-styled consulting economist to the communications industry, contacted Edwin Sobol, the president of N.F.L.F. At the time the plaintiff corporation was selling a T.V. promotional game show which was called "Red Horse Derby" and Terry explained to Sobol that a similar format could be used with film clips from N.F.L. games. Sobol expressed an interest in the idea and thereafter on August 2, 1966, Terry presented to the defendant a contract prepared by the plaintiff's lawyer. The contract basically provided that the defendant would supply plaintiff with film clips of N.F.L. games and receive a royalty on the use of the promotional game by advertisers. No time limitations were included in the contract. During the prior negotiations, it appears that Terry had discussed using the football game clips during the 1966–1967 football

season. Nothing was said about future football seasons.

After reviewing the contract advanced by Terry, Sobol with his staff proposed an "Addendum" to the contract which was agreed to by plaintiff and both the contract and the "Addendum" were signed at the same time and must be considered as one document. The contract provided:

"(a) That N.F.L.F. shall prepare and supply to A.T.C. [plaintiff] one hundred thirty (130) clips of motion picture film of National League Football Games . . . . ."

\* \* \* \* \* \*

"(e) All of such film clips must be supplied to A.T.C. within sixty (60) days from the date of this contract [i. e. by October 1, 1966], with the first package of sixty-five (65) clips to be supplied within thirty (30) days from the date hereof [i. e. September 1, 1966]."

Under the addendum the defendant agreed to supply one film clip immediately [and admittedly that was done] but the plaintiff agreed that

"A.T.C.I. will notify N.F.L.F. by the twenty-second of August of its requirements for sixty-four additional clips to be employed in Football Derby. With this notification, A.T.C.I. will make an additional deposit of $2500."

Admittedly, no notification was given by plaintiff to defendant on August 22, 1966. Nor was payment of the $2500 ever tendered.

One other contract provision must be noted:

"8. That any default by A.T.C.I. hereunder, if not cured within thirty (30) days after written notice of default from N.F.L.F., shall be sufficient cause for N.F.L.F. at its option to termination to A.T.C.I.: \* \* \*"

The defendant did not supply any other film clips to the plaintiff but on March 13, 1967, long after the 1966–1967 football season had ended, Sobol on behalf

of defendant sent the following letter to plaintiff:

"As a result of some recent erroneous newspaper publicity, I regret very much that the National Football League has definitely set a policy which would prevent my supplying any films for the show we discussed which was supposed to go on last season. The League absolutely refuses to let N.L.F. Films, Inc. participate in any type of lottery or chance-type of program."

In fact, at trial it developed that there was no such policy by the N.F.L. prohibiting the sale of film clips by defendant. It appears instead that Sobol casually chatted about the subject with some of the N.F.L. officials at the draft meeting and then issued the above quoted letter.

In the interim between the signing of the contract and the March 13, 1967 letter the plaintiff had arranged to have a pilot film made of the proposed "Football Derby" and had contacted Sobol in a few phone calls glowingly commenting on how sales efforts were going. Three letters in the same tone were also sent by Terry to defendant. Each went totally unanswered by defendant.

Shortly after March 13, 1967, after attempts to resolve their differences had failed, plaintiff instituted this lawsuit against defendant.

It is the plaintiff's contention that the August 2, 1966 contract was not restricted to the 1966–1967 football season; that the failure of plaintiff to give the defendant notice and pay the defendant $2500 by August 22, 1966, did not constitute a default under the contract; and that even if that failure was a default it was excused when defendant failed to give a notice of default as required by paragraph 8 of the contract.

■ The plaintiff's contentions must each fall. In the absence of unequivocal language courts traditionally have been reluctant to create an obligation in perpetuity. Holt v. St. Louis Union Trust Co., 52 F.2d 1068 (4th Cir. 1931). It is unnecessary to go further but the facts show that the parties never bargained for more than the 1966–1967 football season. Their negotiations did not even consider more than that. It is true that Terry may have envisaged a continuing relationship. But the unspoken hopes of one of the contracting parties does not have any binding effect.

■ In any event, plaintiff in failing to give notice and make payment when and as required, breached a condition precedent to any liability on the part of the defendant. See Corti v. Continental Copper and Steel Export Corporation, 223 F.Supp. 503 (S.D.N.Y.1963); 5 Williston on Contracts §§ 663, 665 (3d ed. 1961); Restatement (Second) of Contracts § 251 (1973).

■ Of course, considering the notice and payment required in the addendum to the contract as a condition precedent it is clear that the default provisions of the contract do not attach. If another result could be tortured out of the language it would mean that plaintiff would not have to give the notice or pay what is commonly called "good faith money" until September 22, 1966, but the defendant would be required to deliver a substantial portion of the film on September 1, 1966. Such an incongruous conclusion will not be countenanced.

"It is a cardinal rule of construction that a court should not 'adopt an interpretation' which will operate to leave a 'provision of a contract . . . without force and effect'. Muzak Corp. v. Hotel Taft Corp., 1 N.Y.2d 42, 46, 150 N.Y.S.2d 171, 174, 133 N.E. 2d 688, 690." Corhill Corp. v. S. D. Plants, Inc., 9 N.Y.2d 595, 599, 217 N.Y.S.2d 1, 3, 176 N.E.2d 37, 38 (1961), quoted with approval in Ralph Hochman & Company v. Fort Stanwix Mfg. Co., 284 F.Supp. 995, 999 (N.D. N.Y.1967).

As was said in New Winkle, Inc. v. John L. Armitage & Co., 238 F.2d 753 (3rd Cir. 1956):

"It is elementary that a written contract is to be construed so as to give effect to all of its parts, and any con-

struction which would render the agreement meaningless should be avoided." 238 F.2d at 757.

This opinion is to constitute Findings of Fact and Conclusions of Law as required by Rule 52 of Federal Rules of Civil Procedure. Therefore, judgment must enter for the defendant. The judgment is to include costs.

Settle. judgment on seven days' notice.