CROSS & CROSS PROPERTIES, LTD., Plaintiff-Appellee, Cross-Appellant,

v.

EVERETT ALLIED COMPANY, Defendant-Appellant, Cross-Appellee.

Nos. 1160, 1276, Dockets 89-7169, 89-7171.

United States Court of Appeals, Second Circuit.

Argued May 11, 1989.

Decided Sept. 21, 1989.

---

Warren J. Kaps, New York City, for defendant-appellant, cross-appellee.

Vincent Lipari, New York City (Carro, Spanbock, Kaster & Cuiffo, of counsel), for plaintiff-appellee, cross-appellant.

Before KEARSE, CARDAMONE and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

This case involves cross-appeals from a judgment of the United States District Court for the Southern District of New York (Carter, *J.*). As part of what was apparently a complex tax shelter, appellant Everett Allied Company ("EAC") sold a garage to Goodwalk Associates ("Goodwalk"), a limited partnership, in return for notes secured by a mortgage.[1] Under a sale-leaseback arrangement, Goodwalk made payments on its debt to EAC, and EAC paid Goodwalk rent for use of the property. At the same time, EAC entered into a "consulting" agreement with appellee Cross & Cross Properties, Ltd. ("Cross"), under which Cross was to receive annual "consulting" fees through 1988 if it ensured that Goodwalk (with

---

1. The negotiations were in fact between EAC and R.A. Inbows, Ltd. (a company controlled by Ira Smith, the President of Cross & Cross Properties), but R.A. Inbows designated Goodwalk to purchase the property in its stead.

which it was closely affiliated) made its annual payments to EAC. EAC subsequently brought a foreclosure action against Goodwalk, which Goodwalk settled in mid–1986 by reconveying the property to EAC. Cross then brought this action against EAC for its consulting fees for 1985–1988. After EAC counterclaimed for fees it had earlier paid to Cross, Cross moved for Rule 11 sanctions against EAC.

For the reasons stated below, we reverse the district court's judgment insofar as it required EAC to pay Cross fees for 1986–1988. Further, we reverse and remand for findings as to whether EAC violated Rule 11 by asserting a counterclaim for fees that had been the subject of an earlier settlement with Cross.

## BACKGROUND

In the spring of 1978, Ira Smith, the President of Cross, entered into negotiations with EAC regarding a four-story garage in the State of Washington. EAC agreed to sell the garage to Smith's nominee, Goodwalk Associates, a limited partnership which was headed by Barry Smith, Ira's brother, and which was formed specifically for this transaction. Goodwalk, in turn, agreed to lease the property back to EAC.

Under the arrangement, on July 1, 1978, EAC transferred title in the garage to Goodwalk in exchange for two notes for a total of $2.26 million; the notes were secured by a mortgage on the property. The agreement stipulated that Goodwalk was to make annual payments of principal and interest (the "debt service payments") of $198,000 to EAC; this included a substantial lump-sum payment which was due every year on July 1 (the "July payment"), and the balance of the annual payments were to be made in equal monthly installments. In return, EAC was to make annual rental payments of $154,000 to Goodwalk.

The net difference between Goodwalk's debt service payments and EAC's rental payments—$44,000—was to be met by annual capital contributions from Goodwalk's limited partners. The transaction was structured so that part of each $44,000 contribution was allocated to the July lump-sum payment, which was to be EAC's annual profit. The balance of the $44,000 was to be paid by Goodwalk to EAC as part of its debt service payments, and then EAC would pay consulting fees due to Cross.

Cross' fees were set under a collateral "consultancy agreement" between EAC and Cross. The agreement provided that Cross was to receive annual consulting fees until 1988. In return, the agreement required Cross to afford EAC certain nominal consulting services and—more importantly—provided that EAC was not to be liable for Cross' annual fees unless EAC received its full annual debt service payments from Goodwalk. Thus, the overall arrangement was structured so that if Goodwalk made its full annual debt service payments to EAC, EAC was, according to Cross, to forward a portion of those payments to Cross in the form of consulting fees.

Relations between the parties soured over the first few years of the arrangement, in part because both sides were habitually late in making payments to each other. In April 1982 EAC sent Cross a letter of termination, announcing that EAC would no longer pay Cross its annual consulting fees because Goodwalk had failed to make full and timely payments on its debt, and demanding that Cross return all fees already paid by EAC. Then, on August 3, 1983, EAC sued Goodwalk in a foreclosure action in Washington state court on the ground that Goodwalk had defaulted on its obligations to EAC; EAC sought to accelerate the full amount due, approximately $2.252 million, and to foreclose on the mortgage. That foreclosure action was stayed in 1984 when Goodwalk filed for bankruptcy in the Southern District of New York, but Goodwalk nevertheless continued to make full payments on its debt to EAC through mid–1986. In April 1984, EAC commenced an action in New York state court against Cross, seeking return of all fees it had paid to Cross before April 1982; the status of that suit is not known to this court at this time.

These various disputes between the parties were largely settled in 1985 and 1986. In January 1985, EAC and Cross entered into a stipulation in the Washington foreclosure action which settled all claims between them, as of December 31, 1984, specifically leaving unresolved any claims for consulting fees due after that date. In August 1986, after Goodwalk had made all payments which were due to EAC through July 1986—including the lump-sum July payment for 1986—EAC and Goodwalk agreed to settle all their claims, and Goodwalk reconveyed the property to EAC. Thus, this separate action originally stemmed from Cross' claims for fees owed by EAC for the years *after* 1984, *i.e.*, from 1985 to 1988.

Cross first brought this action against EAC in January 1986 in New York state court, claiming that EAC owed Cross consulting fees for 1985, and had wrongly repudiated its obligation to pay fees to Cross for 1986–1988. Cross alleged that EAC therefore owed Cross a total of $49,047 for the four years' fees, plus interest.

On EAC's petition, the suit by Cross was removed to federal court on grounds of diversity. Following removal, EAC entered its answer, and counterclaimed for the fees paid to Cross before April 1982. EAC also moved to have the action dismissed for lack of personal jurisdiction or, in the alternative, for a change of venue. EAC further moved for disqualification of Cross' counsel because the law firm representing Cross had assisted EAC during the original negotiations. Cross thereafter cross-moved for dismissal of EAC's counterclaim, pointing out that the January 1985 Washington state court settlement between Cross and EAC barred EAC's counterclaim for fees paid before December 31, 1984. In an order dated March 12, 1986, the district court herein denied EAC's various motions, and, in light of the Washington settlement, granted Cross' motion to dismiss EAC's counterclaim for fees paid before April 1982.

The case proceeded towards trial, and the parties filed their joint pretrial order on December 4, 1987. As part of its contentions for trial, Cross urged the district court to sanction EAC under Rule 11 of the Federal Rules of Civil Procedure for filing its unsuccessful motions and counterclaim.

On May 10, 1988—three days before EAC was notified that the case was on Judge Carter's ready trial calendar, and over five months after the pretrial order was filed—EAC moved to amend its answer to add the affirmative defenses of failure of consideration, fraud, breach of duty of good faith, and illegality of contract. The district court ruled that EAC's motion to amend was untimely, and denied the motion.

The district court held a one-day bench trial, and rendered a decision on December 21, 1988. The court found that EAC's obligations to pay consulting fees to Cross had survived EAC's attempted repudiation in April 1982. Then, addressing Cross' claims for 1985–1988, the court held that because Goodwalk made full debt service payments in 1985, EAC was clearly "obligated to pay Cross the 1985 consultancy fee of $17,545."

The court further held that EAC was liable for fees for 1986, 1987, and 1988. The court reached this conclusion even though Goodwalk had made payments only through July 1986, and, as is clear to us, was almost certain to make no payments for 1987 or 1988 in light of the August 1986 settlement in the Washington foreclosure action. The court reasoned as follows:

> EAC ... initiated the foreclosure proceedings, the settlement of which frustrated Goodwalk's payment of the debt service from August, 1986. It cannot refuse to meet its obligation to pay Cross' fee of $15,130 for 1986. Moreover, since EAC made impossible the performance of the condition precedent to its obligation to pay Cross' fee, it is not excused from payment for 1987 ($12,271) and 1988 ($4,100).

The district court then addressed Cross' request for Rule 11 sanctions against EAC for EAC's unsuccessful motions and counterclaim. The court found that although EAC's preliminary motions for dismissal, change of venue, and disqualification were

weak, they did not warrant Rule 11 sanctions. The court also rejected Cross' claim for Rule 11 sanctions for EAC's counterclaim, stating:

> While EAC must have known that it had no right to seek return of the fees paid, Rule 11 sanctions should not be awarded for every incorrect statement of fact in a pleading. The court should look to the pleading as a whole. The pleadings of the EAC as a whole pass muster.

Judgment was entered on January 11, 1989, and these cross-appeals followed.

## DISCUSSION

### I. *The Contractual Question*

■ We turn first to EAC's claim that the district court, as a result of an incorrect interpretation of the consulting agreement, erroneously held that EAC's obligations to Cross continued after EAC's 1982 letter of termination. The consulting contract provided that EAC was not "liable for the payment of [Cross'] fees if [EAC did] not receive the full payment of debt service under the terms of the Wraparound Note and Mortgage." On the basis of that language, EAC argues that Cross should have been entitled to its annual fees only if Goodwalk made *all* of its payments to EAC in a timely manner. Thus, argues EAC, Goodwalk's chronically delinquent payments gave EAC sufficient grounds in April 1982 to refuse to pay any further fees to Cross. On our review of the facts herein, however, we agree with the district court that the parties did not intend to require Cross to ensure that Goodwalk made every monthly payment in a timely manner, so long as Goodwalk made its payments in full for any given year. Since the district court specifically found that Goodwalk made full payments on its debt from 1982 to mid-1986, and that finding is not clearly erroneous, we affirm the district court's holding that EAC's obligations to Cross survived EAC's attempted termination in April 1982.

■ We turn, then, to EAC's obligations to Cross for the years 1985–1988. The district court found that the parties' original intent was for EAC to pay Cross an annual fee in each of those years if Goodwalk made its full debt service payments. Since the parties thus intended their obligations to arise and be met on a year-by-year basis, we will weigh each year's obligations separately. *See Restatement (Second) of Contracts* § 240 (1981) [hereinafter *Restatement*]; 3A A. Corbin, *Corbin on Contracts* § 695, at 284–85 (1960).

Both sides to this appeal agree that Goodwalk's full payment of its debt service obligations was a condition precedent to EAC's obligation to Cross. *See Restatement, supra,* § 226. In 1985, that condition precedent was met when Goodwalk made full debt service payments to EAC. We therefore affirm the district court's holding that, with the condition precedent met for 1985, EAC was obliged to pay Cross its fee for 1985 of $17,545.

■ The fees due Cross from EAC for 1986–1988 pose a thornier problem, however, because Goodwalk made only partial payments in 1986 and made no payments at all in 1987 and 1988. Normally, EAC would not have been required to pay any fees for those years, since the condition precedent—Goodwalk's full payment on its debt to EAC—was not met in any of the three years. However, the district court found that EAC in effect waived the condition precedent by bringing the foreclosure action in Washington state court. The district court held that, since settlement of the foreclosure action in 1986 "made impossible the performance of the condition precedent" by Goodwalk, EAC was fully obliged to pay Cross' annual fees even though Goodwalk was no longer making any payments to EAC.

It is true that a condition precedent may be excused if the party whose performance is predicated on that condition somehow blocks its occurrence. "It is a well settled and salutary rule that a party cannot insist upon a condition precedent, when its non-performance has been caused by himself." *Young v. Hunter,* 6 N.Y. 203, 207 (1852); *see, e.g., Spanos v. Skouras Theatres Corp.,* 364 F.2d 161, 169 (2d Cir.) (in banc), *cert. denied,* 385 U.S. 987, 87 S.Ct. 597, 17

L.Ed.2d 448 (1966); *Kooleraire Serv. & Installation Corp. v. Board of Educ.*, 28 N.Y.2d 101, 106, 268 N.E.2d 782, 784, 320 N.Y.S.2d 46, 48 (1971); *McIntosh Ready Mix Concrete Corp. v. R.D. Battaglini Corp.*, 36 A.D.2d 561, 562, 317 N.Y.S.2d 692, 695 (3d Dep't 1971); 3A A. Corbin, *supra*, § 767. "The doctrine is purely one of waiver; active conduct of the conditional promisor, preventing or hindering the fulfillment of the condition, eliminates it and makes the promise absolute." *Amies v. Wesnofske*, 255 N.Y. 156, 163, 174 N.E. 436, 438 (1931).

It is clear, however, that a condition precedent is not automatically waived simply because the conditional promisor blocks the condition precedent. There are, after all, "some cases in which some sort of prevention or interference is contemplated by the parties as quite proper and within the privileges of the promisor." 3A A. Corbin, *supra*, § 767, at 545. Thus, it was not enough that EAC made impossible the performance of the condition precedent; for the condition precedent to have been excused herein, EAC, the conditional promisor, must have blocked the condition "through a breach of the duty of good faith and fair dealing." *Restatement, supra*, § 225 comment b.

Courts applying New York law repeatedly have recognized the duty of good faith and fair dealing, the " 'implied obligation to exercise good faith not to frustrate [a] contract[ ] into which [one has] entered.' " *Lowell v. Twin Disc, Inc.*, 527 F.2d 767, 770 (2d Cir.1975) (quoting *Grad v. Roberts*, 14 N.Y.2d 70, 75, 198 N.E.2d 26, 28, 248 N.Y.S.2d 633, 637 (1964)); *see Filner v. Shapiro*, 633 F.2d 139, 143 (2d Cir.1980) (citing *Kirke La Shelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79, 87, 188 N.E. 163, 167 (1933)); *see also Restatement, supra*, § 205; Burton, *Breach of Contract and the Common Law Duty to Perform in Good Faith*, 94 Harv.L.Rev. 369, 379 (1980). Since the duty of good faith and fair dealing is implied in every contract, contracting parties' fields of discretion under a contract are bounded by the parties' mutual obligation to act in good faith. *See Contemporary Mission, Inc. v. Famous*

*Music Corp.*, 557 F.2d 918, 923 n. 8 (2d Cir.1977). The boundaries set by the duty of good faith are generally defined by the parties' intent and reasonable expectations in entering the contract. *See Restatement, supra*, § 205 comment a (good faith performance "emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party"); Burton, *supra*, at 371.

To determine whether EAC breached its duty of good faith by bringing the 1983 Washington foreclosure action, and thus waived the condition precedent to its payment of annual fees to Cross, we therefore must examine whether the parties herein reasonably contemplated such an "interference" with the condition precedent. While determining the parties' original contemplation in this regard can often raise knotty questions of fact and require remand to the district court, *see DAL Constr. Corp. v. City of New York*, 108 A.D.2d 892, 893, 485 N.Y.S.2d 774, 775 (2d Dep't 1985); Burton, *supra*, at 389, the record herein is sufficiently well developed that we do not require further findings on this question, and our task becomes largely one of contractual interpretation, *see, e.g., Sobiech v. International Staple & Machine Co.*, 867 F.2d 778, 782 (2d Cir.1989) (discussing broad appellate review of the mixed questions of law and fact that arise in contractual interpretation).

In attempting to construe the contracting parties' intent fairly and reasonably, *see Farrell Lines, Inc. v. City of New York*, 30 N.Y.2d 76, 83, 281 N.E.2d 162, 165, 330 N.Y.S.2d 358, 362 (1972), we must consider (among other things) the specific language of the contract, and the context within which that contract was formed, *see New York Bank for Savings v. Howard Cortlandt St., Inc.*, 106 A.D.2d 496, 498, 482 N.Y.S.2d 836, 838 (2d Dep't 1984); *Janos v. Peck*, 21 A.D.2d 529, 535, 251 N.Y.S.2d 254, 261 (1st Dep't), *aff'd*, 15 N.Y.2d 509, 202 N.E.2d 560, 254 N.Y.S.2d 115 (1964). The contracts between EAC and Goodwalk, upon which the EAC–Cross consultancy agreement rested, specifically made reference to EAC's right to seek acceleration in

the event of default. Moreover, Cross and Goodwalk themselves seem clearly to have anticipated an early foreclosure that would terminate the arrangement. Although the payments on the debt technically were supposed to stretch from 1978 to 2016, Ira Smith (the President of Cross) testified that he structured the arrangement so that there would be a cash flow for only 10 years, and Barry Smith (general partner of Goodwalk) acknowledged in response to interrogatories in the Washington action that the partnership planned to default and trigger a foreclosure as early as 1987. Thus, the record clearly shows that the possibility of a foreclosure action was within the reasonable contemplation of the parties from the outset. Furthermore, the record reveals that Goodwalk conceded in later bankruptcy proceedings that EAC's foreclosure action was justified because "the debt service on the Note [to EAC] ... had not been paid to [EAC by Goodwalk] in accordance with and pursuant to the terms of the Note and Mortgage." *See* Third Modified Amended Plan of Reorganization, *In re Goodwalk Assocs.*, No. 84–B–11762 (Bankr. S.D.N.Y. Aug. 20, 1986); *cf. Restatement, supra,* § 205 comment e ("pretended dispute" can constitute breach of duty of good faith).

In sum, EAC's foreclosure action was within the reasonable expectations of the parties. Since the foreclosure action did not constitute a breach of EAC's duty of good faith and fair dealing, that action and the resulting settlement did *not* excuse the condition precedent to EAC's obligation to Cross, namely, Goodwalk's annual payments on its debt to EAC. And because that condition precedent was neither excused nor fulfilled in 1986, 1987 and 1988, EAC's obligations to pay Cross never became due in those years. *See Restatement, supra,* § 225. The district court erred, therefore, in awarding Cross its fees for those years, and we remand to the district court for entry of a modified judgment so as to award Cross its fees only for 1985, and not for 1986–1988.

## II. *EAC's Other Claims*

■ The bulk of EAC's remaining claims on appeal stem from the district court's refusal to allow EAC to amend its answer to include the affirmative defenses of failure of consideration, fraud, breach of duty of good faith, and illegality of contract. Under Rule 15(a) of the Federal Rules of Civil Procedure, however, a district court has "extensive discretion to decide whether to grant leave to amend," 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1486 (1971), and, given the untimeliness of EAC's motion to amend, we see no reason to reverse the district court's exercise of its discretion herein.

EAC also claims that the district court erred in allowing Cross to introduce certain documents that were not listed in the pretrial order. Again, however, EAC's claim fails in light of the district court's considerable discretion in managing a trial. As the commentary to Rule 16(e) notes, although "pretrial orders should not be changed lightly[,] ... total inflexibility is undesirable." Fed.R.Civ.P. 16(e) advisory committee notes (citing *Clark v. Pennsylvania R.R. Co.*, 328 F.2d 591, 594–95 (2d Cir.), *cert. denied,* 377 U.S. 1006, 84 S.Ct. 1943, 12 L.Ed.2d 1054 (1964)). From our review of the record, we conclude that EAC suffered no serious prejudice as a result of the documents at issue, *see McFadden v. Sanchez,* 710 F.2d 907, 911 (2d Cir.), *cert. denied,* 464 U.S. 961, 104 S.Ct. 394, 78 L.Ed.2d 337 (1983), thus, we decline to disturb the trial court's decision to admit those documents into evidence.

## III. *Cross' Rule 11 Claims*

On its cross-appeal, appellee argues that the district court erred in failing to award sanctions against EAC and its counsel [2] for: (1) its pretrial motions to dismiss for lack of jurisdiction or for change of venue, and

---

**2.** While Cross' cross-appeal suggests that *it is* seeking sanctions against EAC and not its counsel, we discuss the application in terms of both EAC and its counsel. On remand the district court may, of course, determine that Cross had intentionally limited its application to seeking sanctions only against EAC.

to disqualify counsel; and (2) its equally unsuccessful counterclaim for fees earlier paid to Cross.

■ The standards for imposition of sanctions under Rule 11 are well established in this Circuit. In a case such as this one, we will undertake a *de novo* review of the record to determine whether a groundless claim warrants sanctions under Rule 11. *See, e.g., Greenberg v. Hilton Int'l Co.,* 870 F.2d 926, 934, *modified on reh'g,* 875 F.2d 39 (2d Cir.1989); *City of Yonkers v. Otis Elevator Co.,* 844 F.2d 42, 49 (2d Cir.1988). There need be no showing of bad faith on the part of the attorney who signed the paper at issue. *See, e.g., Greenberg,* 870 F.2d at 934. Instead, applying a test of objective reasonableness, this court will hold that sanctions are warranted where

> it is clear that: (1) a reasonable inquiry into the basis for a pleading has not been made; (2) under existing precedents there is no chance of success; and (3) no reasonable argument has been advanced to extend, modify or reverse the law as it stands.

*International Shipping Co. v. Hydra Offshore, Inc.,* 875 F.2d 388, 390 (2d Cir.1989).

■ As we have noted, it is important that Rule 11 not have the effect of chilling creative advocacy, even of positions that may arguably be at odds with existing precedent. *See, e.g., Greenberg,* 870 F.2d at 935. Courts should therefore resolve all doubts in favor of the signer, *see Calloway v. Marvel Entertainment Group,* 854 F.2d 1452, 1469–70 (2d Cir.1988), *rev'd on other grounds sub nom. Pavelic & Leflore v. Marvel Entertainment Group,* —— U.S. ——, 109 S.Ct. 1116, 103 L.Ed.2d 179 (1989); *Motown Prods. v. Cacomm, Inc.,* 849 F.2d 781, 785 (2d Cir.1988) (per curiam); *Oliveri v. Thompson,* 803 F.2d 1265, 1275 (2d Cir.1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987), but should impose sanctions when " 'it is patently clear that a claim has absolutely no chance of success,' " *Calloway,* 854 F.2d at 1470 (quoting *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985)). Applying

those standards herein, we cannot say that EAC's various pretrial motions challenged on this cross-appeal were so lacking in merit as to fall below the objective reasonableness Rule 11 imposes on attorneys. We therefore affirm the district court's denial of sanctions regarding those motions.

■ The district court's handling of Cross' claim for sanctions regarding EAC's counterclaim poses more difficult problems, however. The district court determined— and EAC concedes on this cross-appeal— that EAC's counterclaim for fees paid to Cross before April 1982 was without foundation because of EAC's settlement with Cross in the Washington state court action. But the district court nevertheless declined to impose sanctions on EAC for the groundless counterclaim because the court found that the "pleadings of ... EAC as a whole pass muster."

It has been noted that, "[b]y definition, every unsuccessful complaint, at some level of analysis, contains either a flawed argument or an unsupported allegation," *Burull v. First Nat'l Bank,* 831 F.2d 788, 789 (8th Cir.1987), *cert. denied,* —— U.S. —— 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988), and that an argument or minor sub-claim, though frivolous, may well not warrant sanctions if made as part of "an otherwise well-and-independently grounded claim." *Calloway,* 854 F.2d at 1473 n. 9; *see Golden Eagle Distrib. Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1540 (9th Cir.1986). Furthermore, logically speaking, one of the measures of the reasonable inquiry required for a claim is the significance of that claim in the pleading as a whole. *See Oliveri,* 803 F.2d at 1280.

But to adopt a standard that would deny sanctions for a significant and obviously meritless claim simply because the rest of the pleading was sound strikes us as contrary to this court's established reading of Rule 11. In *Eastway Construction,* we held that sanctions are mandated where it is "patently clear that a *claim* has ... no chance of success," 762 F.2d at 254 (emphasis added), and in *Greenberg,* the panel opinion carefully analyzed each significant claim in the challenged complaint, 870 F.2d

at 934–37. To adopt the standard applied by the district court would allow a party with one or more patently meritorious claims to pepper his complaint with one or more highly advantageous, yet wholly frivolous, claims, for that party would be assured that the weight of his meritorious claim(s) would shield him from sanctions. In light of these considerations, we hold that the district court applied an improper standard in weighing only the merits of the pleading *as a whole*, and overlooking the question of the objective reasonableness of the individual counterclaim. *See Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir.1988) (citing *Andre v. Merrill Lynch Ready Assets Trust*, 97 F.R.D. 699, 703 (S.D.N.Y. 1983) (Pollack, J.)); *Frantz v. United States Powerlifting Fed'n*, 836 F.2d 1063, 1067 (7th Cir.1987). *Contra Burull*, 831 F.2d at 789–90 (Eighth Circuit held district court did not err in denying sanctions because of merit of pleading as a whole).

■ We must remand to the district court, however, because on the record herein we cannot determine whether counsel for EAC did, in fact, violate Rule 11 by including the subject counterclaim. Notably, the record shows that EAC did make an effort to withdraw its claim for damages as soon as counsel was notified of the earlier Washington state court settlement (in which EAC's present counsel did not take part). However, that late effort to withdraw did not resolve the problem if counsel failed to make a reasonable inquiry *before* the counterclaim was filed. *See Calloway*, 854 F.2d at 1472; *see also* Fed. R.Civ.P. 11 advisory committee notes (prefiling inquiry should be judged by what was "reasonable[ ] under the circumstances"). *See generally* Note, *Rule 11 of the Federal Rules of Civil Procedure and the Duty to Withdraw a Baseless Pleading*, 56 Fordham L.Rev. 697 (1988).

Nothing in the record indicates whether counsel's prefiling inquiry regarding the counterclaim was objectively reasonable. *Cf. United States v. Parke, Davis & Co.*, 362 U.S. 29, 44, 80 S.Ct. 503, 511, 4 L.Ed.2d 505 (1960) (district court's findings of fact that were premised upon incorrect standard of law are not binding on appeal). It was only in his reply brief, on this cross-ap-peal, that counsel finally explained that he based the counterclaim upon information from his client and upon the complaint filed by EAC in the 1984 New York action. Our review, however, is limited to the record, and " '[f]actual statements contained in a party's brief are not a part of the record.' " *Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1127–28 (2d Cir.1989) (quoting *Matter of Frank Fehr Brewing Co.*, 268 F.2d 170, 183 (6th Cir.1959), *cert. denied*, 362 U.S. 963, 80 S.Ct. 880, 4 L.Ed.2d 878 (1960)). It will therefore rest with the district court on remand to determine whether it was objectively reasonable for counsel to rely upon his client (whose agent was present at the Washington settlement), *see Greenberg*, 870 F.2d at 935, and upon the earlier complaint, in framing the counterclaim. *See Calloway*, 854 F.2d at 1470. *See generally* Schwarzer, *Rule 11 Revisited*, 101 Harv.L.Rev. 1013, 1020–25 (1988).

■ On remand, the district court must also address Cross' claim that Rule 11 sanctions should be imposed against EAC itself because it brought the counterclaim in bad faith. Although Rule 11 does allow sanctions against a client even if he does not himself sign a pleading, *see* Fed.R.Civ.P. 11, the district court may not direct sanctions against EAC unless Cross shows that EAC had "actual knowledge that filing the paper constituted wrongful conduct," *Calloway*, 854 F.2d at 1474; *see Greenberg*, 870 F.2d at 934, 939.

### CONCLUSION

We have weighed the other claims raised herein, and find them to be without merit. For the reasons stated above, the judgment of the district court is affirmed in part and reversed in part, and the cause is remanded for further proceedings not inconsistent with this opinion. Each party shall bear its own costs on this appeal.