■ M.J. RAYNES INCORPORATED, Appellant, v JAMES A. PEPI-TONE REALTY CORP. et al., Respondents.—Order, Supreme Court, New York County (David Saxe, J.), entered January 13, 1989, which denied plaintiff's motion for summary judgment on its first and second causes of action, reversed, on the law, and the motion granted, on liability, and the case remanded to the Supreme Court for an inquest to determine the amount of damages to which plaintiff is entitled, without costs.

Plaintiff seeks to recover brokerage commissions which it claims are due by reason of its sale of various units at two condominium developments. Pursuant to a letter agreement with James A. Pepitone Realty Corp., agent for the respective sponsors of the two developments, plaintiff was appointed sole and exclusive marketing and sales agent for the developments, and was to receive a 3% commission of the total purchase price for all units sold through the plaintiff's efforts.

On this motion for summary judgment, plaintiff has submitted undisputed evidence that it performed marketing and sales activities through which it procured purchasers for 61 units at the Fox Meadow development and 28 units at the Fox Hill development for a purchase price of approximately $15 million, generating to the defendants approximately $10 million in proceeds of sales of those units which had already "closed" at the time plaintiff originally made this motion. Plaintiff has not received any commission whatsoever on these sales.

In response to plaintiff's motion for summary judgment on its causes of action for commissions, defendants raise speculative and conclusory arguments with respect to the interpretation of the agreement, and the alleged improper performance by plaintiff of its marketing functions. Upon close examination, neither of these points is sufficient to raise a triable issue of fact to defeat summary judgment on plaintiff's two causes of action for commissions.

Whatever the meaning of the introductory phrase "[i]n any event" in the letter agreement between the parties, the contents of which are more fully set forth in the dissent, there is no question as to the meaning of the agreed-upon discrete individually numbered provisions that follow. Provision No. 1 unambiguously provides that plaintiff "shall receive a three (3%) percent commission of the total purchase price for all Units sold by [plaintiff] at the respective properties". Notwithstanding defendants' arguments to the contrary, this separate and independent provision clearly and unconditionally pro-

vides that plaintiff shall receive a 3% commission for all units sold.

Defendants argue that plaintiff failed to fulfill its marketing responsibilities under provision No. 4 of the agreement and, therefore, is not entitled to any commissions. When the defendants' arguments are distilled to their essence, it appears that they are claiming that plaintiff's right to commissions for units sold is somehow conditioned on the quality of plaintiff's marketing services as it relates to units not sold. There is, however, no such condition in the agreement involved. While the dissent indicates that the 3% commission was to be plaintiff's only compensation for *both* sales and marketing, the agreement itself does not so provide. It specifically and discretely states that plaintiff "shall receive a three (3%) commission of the total purchase price for all Units sold by you at the respective properties." While provision No. 4 in the agreement provides that plaintiff will "perform such services as are customarily performed by marketing and sales agents for project of this nature", there is no reference in the agreement to any compensation for such services beyond the promise in provision No. 3 to promptly reimburse plaintiff for all costs and out-of-pocket expenses including payroll for onsite staff and sales personnel, nor does the agreement in any way tie plaintiff's right to compensation for units actually sold to the quality of its past marketing services, or to the future satisfactory performance of such services.

While a failure of plaintiff to provide the marketing services called for under the agreement might justify defendants' premature termination of the agreement, it would not serve to deprive plaintiff of the commissions to which it is entitled with respect to units already sold and partial summary judgment is granted to plaintiff on the causes of action seeking such commissions.

Notwithstanding that the interposition of the counterclaim here was undoubtedly an afterthought, as the dissent itself acknowledges, it will only serve to provide relief to defendants if they can demonstrate that plaintiff breached its marketing obligations with resultant damage.

Since plaintiff refers to an arrangement between the parties whereby the defendants were to receive a credit against commissions for reimbursements for costs and disbursements to the plaintiff, and since it is not apparent on this record how much has been reimbursed as of this time, and since it is also not apparent how many sales of units for which plaintiff

earned a commission have actually "closed" as of this time, we remand the case to the Supreme Court for an inquest to determine the precise amount of damages due to the plaintiff.

While the two condominium sponsor corporations are now in bankruptcy, and this action accordingly stayed as to them, this action shall proceed against defendant James A. Pepitone Realty Corp., the party which signed the contract with plaintiff. Concur—Sullivan, J. P., Carro and Ellerin, JJ.

Asch and Rosenberger, JJ., dissent in a memorandum by Asch, J., as follows: I would affirm the order of the Supreme Court denying plaintiff's motion for partial summary judgment on the first two causes of action in the complaint.

Defendant Portjeff Development Corp. and defendant Hampton Bays Realty Corp. are the sponsors of condominium developments in Port Jefferson, Long Island, and Ossining, New York, respectively. Both these corporations are controlled by defendant James Pepitone, who also controls James A. Pepitone Realty Corp., a licensed real estate brokerage firm. By letter agreement dated June 4, 1987, drafted by plaintiff M.J. Raynes Inc., a licensed real estate broker, plaintiff and Pepitone Realty, then the selling agent for both developments, agreed, *inter alia,* as follows:

"We hereby agree to appoint you, and you hereby accept such appointment, as of the date hereof, as the sole and exclusive marketing and sales agent for the above-captioned premises. This appointment, subject to the provisions below, shall survive for a period of thirty (30) days, during which time we shall enter into a formal selling agreement incorporating the essence of the broader financial and business agreements (subject to negotiation) set forth in the letter of intent annexed hereto.

"In any event, it is agreed:

"1. You shall receive a three (3%) percent commission of the total purchase price for all Units sold by you at the respective properties. * * *

"3. We shall promptly reimburse you for all costs and out-of-pocket expenses including the payroll for all on-site staff and sales personnel hired by you for the project.

"4. You shall commence after execution of the Agency Agreement referred to herein, to perform such services as are customarily performed by marketing and sales agents for projects of this nature in the greater New York City area."

This agreement was renewed on identical terms for additional periods of 120 days. Defendant thereafter terminated

plaintiff because formal selling agency agreements could not be reached, and further, since it was dissatisfied with plaintiff's marketing services.

In response, plaintiff began this action. It sought commissions allegedly due because of its role with respect to the Port Jefferson development, in the first cause of action, and commissions relating to the Ossining development, in the second cause of action.

Plaintiff's motion for partial summary judgment on the first and second causes of action was denied by the IAS court.

While plaintiff contends that defendants admitted liability, nothing in the notice to admit constitutes a waiver of defendants' claim that compensation is not due plaintiff because of nonperformance of plaintiff's marketing obligations pursuant to the agreement. Plaintiff asserts that the agreement grants it a 3% commission on sales regardless of whether the marketing obligations were performed, interpreting the phrase "[i]n any event" to mean "no matter what happens". However, this phrase "[i]n any event" could just as validly be interpreted to modify the language immediately preceding which concerns the contemplated execution of a formal selling agreement.

The 3% commission was, pursuant to the agreement, plaintiff's only compensation for *both* sales and marketing. While there does not appear to be any dispute as to the amount of sales that took place, defendants challenge the extent and efficacy of plaintiff's marketing efforts which would have served to accelerate the sellout of the developments. The fact that plaintiff's marketing (or other element in the projects) was deficient is manifest in the fact *both* sponsors are now in bankruptcy. Certainly, therefore, an issue of fact is raised as to whether plaintiff has fulfilled its marketing obligations under the agreement, so as to entitle it to the 3% commission for its sales.

While defendants' counterclaim alleging the same failure by plaintiff to furnish marketing *and* sales services appears speculative as to damages, and its interposition only in response to plaintiff's summary judgment motion also indicates it may be an afterthought it does not vitiate the valid defense asserted by defendants of plaintiff's nonperformance of marketing services, which, in itself, is sufficient to raise disputed issues of fact. Moreover, plaintiff failed upon its motion to demonstrate that its marketing services complied with the standards set forth in the agreement, i.e., "those customarily

performed by marketing * * * agents for projects of this nature in the greater New York City area". In addition, since plaintiff was the drafter of the agreement, the contract must be strictly construed as against it (see, Janos v Peck, 21 AD2d 529, 533, affd 15 NY2d 509). Further, while the sponsors amended their offering plans to include plaintiff as a "selling subagent", there was no showing of any direct contractual relationship between them and the plaintiff. Thus, the brokerage agreement drafted by the plaintiff was signed only by the defendant Pepitone Realty Corp. Also, it now appears that this action is stayed as against both sponsors by the filing of petitions for involuntary bankruptcy against them.